PEOPLE v PESQUERA

Docket No. 209238. Submitted April 11, 2000, at Detroit. Decided January 16, 2001, at 9:00 A.M. Leave to appeal sought.

Luis A. Pesquera was convicted by a jury in the Monroe Circuit Court, William F. LaVoy, J., of two counts of first-degree criminal sexual conduct and five counts of second-degree criminal sexual conduct. The defendant appealed by leave granted.

The Court of Appeals *held*:

1. The defendant's constitutional right to confront the complaining witnesses, five children whose ages ranged from four to six years, was not violated by the children's testimony being presented to the jury by videotaped deposition, as allowed under MCL 600.2163a(13) and (14); MSA 27A.2163(1)(13) and (14). The trial court's decision to dispense with face-to-face confrontation, on motion by the prosecution, was supported by a finding that the children would not have been able to testify in the defendant's presence. The defendant's confrontation rights were adequately protected by the procedure employed by the trial court: the trial court examined the testimonial competency of the children before they were sworn in to testify; the course of the testimony was presided over and controlled by the trial court, with the defendant being afforded a full opportunity to cross-examine each child; the defendant was able to assist in that cross-examination by conferring with his attorney after viewing the testimony live by way of closed-circuit television; the fact that the children testified in the courtroom before the presiding judge served to impress upon the children the seriousness of the matter; and the jury was able to view the appearance and demeanor of the children when the videotaped depositions were shown to the jury.

2. The trial court did not abuse its discretion or deny the defendant a fair trial in admitting as rebuttal evidence the testimony of a psychologist that a seducer of a child "works his way into the trust of a child through being someone like a buddy or parent figure . . . and they . . . exploit that relationship," and that child abusers often claim they love children and would not hurt them. The psychologist's testimony served to rebut the defendant's testimony that the children adored him and he never would have harmed any of the

children, as well as to rebut the defendant's claim that the allegations of sexual abuse were false.

3. The trial court did not abuse its discretion in admitting the testimony of a psychotherapist. Because the defendant failed to raise a timely objection to the testimony, review of the alleged error is under the "plain error" rule, which requires a showing of prejudice. The disputed testimony properly responded to attacks made by the defendant on the children's credibility, and the defendant failed to show the requisite prejudice needed to avoid forfeiture of the issue under the "plain error" rule.

4. The trial court did not abuse its discretion in admitting pursuant to MRE 404(b) the testimony of two other children concerning other acts similar to those for which the defendant was tried. The other acts evidence was admissible to show the defendant's scheme, plan, or system in doing the alleged acts, was relevant, and was more probative than prejudicial, and a limiting instruction concerning the evidence was given to the jury.

5. The prosecution did not engage in any misconduct at trial that denied the defendant a fair trial. The other acts evidence offered by the prosecution was properly admissible, the defendant opened the door to the questioning of a woman with whom he had a sexual relationship about the nature of that relationship, and the prosecutor's remarks during closing argument about the defendant's past were properly responsive to comments made by defense counsel.

Affirmed.

M. J. KELLY, P.J., dissenting, stated that the defendant's convictions should be reversed on the ground that the trial court abused its discretion in permitting the children to testify by videotape and in admitting the other acts testimony. The children themselves did not testify at the hearing on the prosecution's motion for videotaped depositions that they would be unable to testify in the defendant's presence. The record belies the prosecutor's claim that the children would have been unable to testify in the defendant's presence inasmuch as the children were able to identify the defendant at trial in face-to-face encounters after the presentation of their videotaped testimony. Given that the children were able to confront the defendant personally, the children should have been required to testify in the defendant's presence. The use of videotaped testimony violated the defendant's right to confrontation, and the violation cannot be deemed harmless given that the case involved a credibility contest and turned on whether the jury believed the children's testimony. Regarding the other acts evidence, that evidence lacked any special quality or circumstance as to be like a "signa-

ture" of the defendant establishing that he followed a modus operandi in the commission of the offenses. The other acts evidence was also more prejudicial than probative.

1. CONSTITUTIONAL LAW — RIGHT TO CONFRONT ACCUSERS.

The right to confront one's accusers consists of four separate requirements: a face-to-face meeting of the defendant and the witnesses against the defendant at trial; the witnesses should be competent to testify and their testimony is to be given under oath or affirmation, thereby impressing upon them the seriousness of the matter; the witnesses are subject to cross-examination; and the trier of fact is afforded the opportunity to observe the witnesses' demeanor (US Const, Am VI; Const 1963, art 1, § 20).

2. CONSTITUTIONAL LAW — RIGHT TO CONFRONT ACCUSERS — FACE-TO-FACE CONFRONTATION — CHILD WITNESSES.

The right of confrontation reflects a preference for face-to-face confrontation at trial; this preference may give way to the state's interest in protecting the complaining witness in a child abuse case if the trial court finds that the child would be traumatized as to be unable to testify in the presence of the defendant (US Const, Am VI; Const 1963, art 1, § 20).

3. WITNESSES — CHILD WITNESSES — VIDEOTAPED DEPOSITIONS — CONSTITUTIONAL LAW — RIGHT TO CONFRONT ACCUSERS.

The requirements and procedures set forth in MCL 600.2163a(13) and (14); MSA 27A.2163(1)(13) and (14) for allowing a child witness to testify by videotaped deposition in certain proceedings instead of confronting the defendant face to face adequately safeguard the defendant's constitutional right to confrontation (US Const, Am VI; Const 1963, art 1, § 20).

4. EVIDENCE — OTHER ACTS — ADMISSIBILITY.

Other acts evidence may be admitted if it is offered for a proper purpose under MRE 404(b), it is relevant under MRE 402 as enforced through MRE 104(b), and its probative value is not substantially outweighed by unfair prejudice; upon request, a trial court may provide a limiting instruction.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Edward F. Swinkey*, Prosecuting Attorney, and *Cheryl E. Werner*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan J. Smith* and *Gary L. Rogers*), for the defendant on appeal.

Before: M. J. Kelly, P.J., and Holbrook, Jr., and Griffin, JJ.

Holbrook, Jr., J. Defendant appeals by leave granted from his jury trial convictions of two counts of first-degree criminal sexual conduct (csc i), MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), and five counts of second-degree criminal sexual conduct (csc ii), MCL 750.520c(1)(a); MSA 28.788(3)(1)(a). Sentenced as an habitual offender, second offense, MCL 769.10; MSA 28.1082, defendant is serving concurrent sentences of life imprisonment for the csc i convictions and 15-22½ years' imprisonment for the csc ii convictions. We affirm.

Defendant was charged with the sexual assault of five children who lived in the mobile home trailer park where he resided. The children ranged in age from four to six years old. Before trial, the prosecution moved that the children be permitted to give videotaped depositions in lieu of live testimony in open court. Over defendant's objection, the trial court granted the prosecution's motion. On the first day of trial, the children's testimony was videotaped. The children testified in the courtroom with the judge, prosecutor, and defense counsel present. The jury was not present. Defendant watched the proceedings live by way of closed-circuit television. Defendant was allowed to consult with his counsel between direct examination and cross-examination of the children. The videotaped testimony was played for the jury on the second day of trial after opening statements by counsel.

I

Defendant argues that allowing the children to testify by way of videotape denied him his constitutionally protected right "to be confronted with the witnesses against him." US Const, Am VI; Const 1963, art 1, § 20. Specifically, defendant argues that the trial court erred in two ways. First, defendant asserts that the court erred in concluding that the children would not be able to testify live, in court, with defendant present. Second, defendant asserts that the videotaping procedure used did not adequately safeguard his rights. We reject both of these arguments.

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v Craig*, 497 US 836, 845; 110 S Ct 3157; 111 L Ed 2d 666 (1990). The right to confront one's accusers consists of four separate requirements: (1) a face-to-face meeting of the defendant and the witnesses against him at trial; (2) the witnesses should be competent to testify and their testimony is to be given under oath or affirmation, thereby impressing upon them the seriousness of the matter; (3) the witnesses are subject to cross-examination; and (4) the trier of fact is afforded the opportunity to observe the witnesses' demeanor. *Id.* at 846, 851. Defendant's challenge focuses on the face-to-face requirement.

While the right of confrontation "reflects a preference for face-to-face confrontation at trial," *Ohio v Roberts*, 448 US 56, 63; 100 S Ct 2531; 65 L Ed 2d 597 (1980), this preference "must occasionally give way to

considerations of public policy and the necessities of the case," *Mattox v United States*, 156 US 237, 243; 15 S Ct 337; 39 L Ed 409 (1895). A state's "interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial . . . in the absence of face-to-face confrontation with the defendant." *Craig, supra* at 855.

Given that face-to-face confrontation sits at "the core of the values furthered by the Confrontation Clause," *California v Green*, 399 US 149, 157; 90 S Ct 1930; 26 L Ed 2d 489 (1970), the trial court must find that the dispensing of the face-to-face requirement is a necessity, *Craig, supra* at 855. In so doing, the trial court must conclude "that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." *Id.* at 856. Because the state's interest is particular to the individual child witness, no bright-line rule can be composed that can be applied each time the issue is raised. Instead, the trial court must make "a case-specific finding of necessity" before dispensing with the face-to-face requirement of the confrontation right. *Id.* at 860.

In Michigan, the protections and requirements we have outlined are embodied in MCL 600.2163a(13) and (14); MSA 27A.2163(1)(13) and (14):

> (13) If, upon the motion of any party or in the court's discretion, the court finds on the record that the witness is or will be psychologically or emotionally unable to testify at a court proceeding even with the benefit of the protections afforded the witness in [MCL 600.2163a(3), (4), (10), and (12); MSA 27A.2163(1)(3), (4), (10), and (12)], the court shall order that a videotape deposition of a witness shall be

taken to be admitted at a court proceeding instead of the
live testimony of the witness.

   (14) For purposes of the videotape deposition under sub-
section (13), the examination and cross-examination of the
witness shall proceed in the same manner as if the witness
testified at the court proceeding for which the videotape
deposition is to be used and the court shall order that the
witness, during his or her testimony, shall not be con-
fronted by the defendant but shall permit the defendant to
hear the testimony of the witness and to consult with his or
her attorney.

Subsection 13 sets forth the broad outline of the
minimum level of psychological or emotional trauma
that must be found. First, the provision provides that
the trial court must find that the defendant's presence
will cause a level of trauma that renders the witness
unable to testify. We read this requirement not as
requiring that the trial court find the witness would
stand mute if put on the witness stand, but rather that
the witness would not be able to truthfully and under-
standably relate the witness' relevant knowledge and
perceptions of the circumstances of the crime. See
MRE 601, 602. Second, the trial court must find that
the witness would be unable to testify even if the pro-
cedures established in subsections 3, 4, 10, and 12 are
employed. These benefits include the use of dolls or
mannequins, the presence of a support person, the
exclusion from the courtroom of all unnecessary per-
sons, and the placement of the defendant as far from
the witness stand as is reasonable under the circum-
stances. We hold that the standards set forth in this
subsection clearly satisfy constitutional standards.
*Craig, supra* at 856.

   As for the procedures set forth in subsection 14, we
read them as an attempt to assure that the other

requirements of the right of confrontation are pre-
served. Cf. *Craig, supra* at 851. The right of cross-
examination is explicitly mentioned, and the com-
mand that the defendant be allowed to hear the testi-
mony and consult with the defendant's attorney helps
assure that a rigorous cross-examination can be
undertaken. Further, we read the directive that the
testimony "shall proceed in the same manner as if the
witness testified at the court proceeding for which
the videotape deposition is to be used" as requiring,
at the very least, that the witness be competent to
testify, that the witness testify under oath or affirma-
tion, and that the trier of fact be able to view the
appearance and demeanor of the witness (a right pro-
tected by the very act of videotaping the testimony).

After reviewing the transcript of the motion hear-
ing, we are not left with a definite and firm conviction
that the trial court clearly erred in finding that the
children would not have been able to testify had the
face-to-face requirement been enforced. MCR
2.613(C); *People v Kurylczyk*, 443 Mich 289, 303; 505
NW2d 528 (1993). In addition to the children's ages,
each child's mother testified that her child would not
be able to testify in defendant's presence. The
mothers spoke of the children's intense fear of defen-
dant, with several noting that their children showed
great reluctance to talk about the matter. Several
mothers also stated that when the subject of the trial
was raised, their children's behavior regressed to an
earlier stage of development. Additionally, two ther-
apists, who were treating three of the children, testi-
fied that those three would not be able to testify in
defendant's presence. For example, one therapist
stated that two of the children would likely "freeze" if

forced to testify in a traditional manner. We believe that this evidence establishes the necessity of dispensing with the face-to-face requirement.

Defendant argues that the trial court's finding of necessity is undermined by the fact that at the conclusion of each child's videotaped testimony, each child was able to identify defendant in a face-to-face confrontation in court. We disagree. That the children were able to simply identify defendant in a brief encounter does not mean that the children would be able to effectively and understandably testify about the circumstances of the abuse if required to do so in a face-to-face confrontation with defendant.[1] See MRE 601.

We further hold that defendant's confrontation rights were adequately protected by the procedure employed by the trial court to memorialize the children's testimony. The trial court examined the testimonial competency of the children before they were sworn in to testify. The course of the testimony was presided over and controlled by the trial court, with defendant being afforded a full opportunity to cross-examine each child. Defendant was able to assist in that cross-examination by conferring with his attorney after having viewed the testimony as it was taken. Additionally, the fact that the children testified in the courtroom before the presiding judge only served to impress upon the children the seriousness of the matter. Finally, we note that the jury was able to view the appearance and demeanor of the children

---

[1] Our discussion of the identification procedure used should not be read as implying that this is a procedure that should or must be followed.

when the videotape was shown to the jury the following day. *Craig, supra* at 851.

II

A

Defendant next argues the trial court abused its discretion and denied him a fair trial by admitting into evidence the expert testimony of psychologist Edward Wasilewski, Ph.D. We disagree. The admission of the expert testimony of Dr. Wasilewski in rebuttal was proper. As the Supreme Court stated in *People v Figgures*, 451 Mich 390, 399; 547 NW2d 673 (1996):

> Rebuttal evidence is admissible to "contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." The question whether rebuttal is proper depends on what proofs the defendant introduced and not on merely what the defendant testified about on cross-examination.
>
> Contrary to the dissent's insinuation, the test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor's case in chief, but, rather, whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant. As long as evidence is responsive to material presented by the defense, it is properly classified as rebuttal, even if it overlaps evidence admitted in the prosecutor's case in chief. [Citations omitted.]

In his case in chief, defendant testified that the children "adored" him, that he "pushed them on swings," and "talked to them" and "watched" them and played with them, and that he would "never" harm any of the children. To rebut defendant's testimony, the prosecutor called Dr. Wasilewski to

counter defendant's apparent defense that an individual who loves children, who in turn adore him, cannot be a child molester. Dr. Wasilewski testified:

> A seducer is a person who works his way into the trust of a child through being someone like a buddy or parent figure, a friend, may go on for weeks or months of doing very innocent things with the child, taking them places, playing games with them, buying them treats or different things, so they are actually setting up a scenario of a relationship and they use that for the purpose of seducing, getting their way into a bond with that child that they could then exploit that relationship.

*     *     *

> Very often they can be very good friends with the parents, and this tends to cause the parents not to be concerned about the person being in any way inappropriate with the child.

Dr. Wasilewski also acknowledged that abusers, when describing their relationships with the abused children, very often claim that they love them and that they would not hurt them. Dr. Wasilewski acknowledged that it was common for child abusers to say that they were adored by children and that they could not hurt a child if they acted out of love. Finally, as the prosecutor points out, Dr. Wasilewski's testimony with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse was proper rebuttal to restore the credibility of the child witnesses in response to defendant's claim that the allegations of sexual abuse were false.

Contrary to defendant's contention, the prosecutor did not elicit testimony from Dr. Wasilewski to show that defendant fit the profile of a child molester or to imply that "defendant was one." As the prosecutor

points out, Dr. Wasilewski never stated that defendant fit the profile of a typical sexual abuser of children or drew any comparisons between defendant and a typical child molester. For these reasons, we conclude that no error requiring reversal occurred as the result of the admission of Dr. Wasilewski's testimony.

B

Defendant also argues that the trial court abused its discretion in admitting the testimony of psychotherapist Mary Alice Frye.[2] Defendant's failure to raise a timely objection to Frye's testimony means that we review the alleged error under the plain error rule. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain . . . , 3) and the plain error affected substantial rights. . . . The third requirement generally requires a showing of prejudice . . . ." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

We find no error in the admission of Frye's testimony. Frye's testimony properly responded to the attacks made by defendant on the children's credibility. *People v Peterson*, 450 Mich 349, 373; 537 NW2d 857 (1995). Further, defendant has failed to establish the requisite prejudice. Accordingly, the issue has been forfeited.

III

Next, defendant argues that the trial court abused its discretion by admitting the other acts evidence

---

[2] Frye testified that she has a masters degree in "[s]ocial work, counseling."

involving two other alleged victims of defendant. We disagree. One witness testified that she had been a friend of defendant. She testified that when she was five years old, defendant entered her bedroom, put his hand in her underpants, touching her in a "very private spot," and then touched her chest through her clothes. She testified that at the time of the alleged assault, defendant was alone in the house with her and her brother. She also testified that just before the alleged assault, defendant was playing video games with her brother. The other witness testified that when he was ten years old, he too was a friend of defendant. The boy further testified that in July 1995, defendant invited the boy over to play video games. Defendant then took the boy to a back bedroom, where defendant sat the boy on his lap, and told the boy he had "a boner." Defendant then attempted to touch the boy's penis.

MRE 404(b)(1) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

As our Supreme Court observed in *People v Engelman*, 434 Mich 204, 213; 453 NW2d 656 (1990), MRE 404(b) is a rule of inclusion, not exclusion.

In *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), the Court announced the following four-

pronged test for evaluating the admissibility of other acts evidence:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

Under the expansive view of rule 404(b) and *VanderVliet* that informs the decision in *People v Sabin (After Remand)*, 463 Mich 43; 614 NW2d 888 (2000), we conclude that the prosecution satisfied the first prong of *VanderVliet* when it argued at trial that the evidence would show defendant's motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, and intent. *Id.* at 59-60, n 6.

On appeal, the prosecution's proper purpose argument has been circumscribed. The prosecution now argues that the other acts evidence was admissible to show defendant's scheme, plan, or system in doing the alleged acts, and to show the absence of mistake or accident. Initially, the trial court found that the other acts evidence "was conditionally relevant under 404(b) to show motive, intention, scheme, plan, knowledge, absence of mistake and absence of accident." When instructing the jury, the court told the jurors that they could consider the other acts evidence only to the extent that it showed defendant's scheme, plan, or system in doing an act, or to the extent that it showed the absence of accident or mistake.

We find that the evidence was relevant under the scheme, plan, or system theory of relevance. In

*Sabin, supra* at 61-62, our Supreme Court stated that other acts evidence can be used to show that defendant devised and used a systematic plan in carrying out the charged offense. The charged and uncharged conduct must be "sufficiently similar" to infer the existence of a common system. *Id.* at 63. In *Sabin,* the majority found the following similarities sufficient to uphold the admission of the challenged evidence: (1) the existence of a "father-daughter relationship" between the defendant and the alleged victims, (2) that the "victims were of a similar age at the time of the abuse," and (3) that the "[d]efendant allegedly played on his daughters' fears of breaking up the family to silence them." *Id.* at 66.

In the case at hand, the common features include (1) that defendant and the alleged victims knew each other, (2) the existence of a friendship between the alleged victims and defendant, (3) the very young ages of the alleged victims at the time of the abuse, (4) that the alleged sexual abuse would occur after defendant invited the children to play with him, and (5) that the improper contact allegedly involved the touching of the children's sexual organs. Given these similarities, we conclude that the trial court did not abuse its discretion in admitting the other acts evidence under the common scheme, plan, or system theory of logical relevance. *Id.* at 67.

However, we find that the evidence was not logically relevant to show the absence of mistake or accident. Defendant did not argue that the children mistakenly perceived his actions or that any improper contact was purely accidental. Defendant's theory of the case was that the children had been coached into fabricating these charges against defendant. Accord-

ingly, we conclude that the other acts evidence was not relevant under either the absence of mistake or accident theory. See *id.* at 69.

We also conclude that the trial court did not abuse its discretion in not finding that the danger of undue prejudice substantially outweighed the probative value of the evidence. MRE 403; *VanderVliet, supra* at 75. While the danger of prejudice was real, the tendency of the evidence to establish a common plan, scheme, or system was significant (especially in light of defendant's claim of fabrication). *Sabin, supra* at 71. The limiting instruction given to the jury also served to limit the danger of unfair prejudice by restricting use of the evidence. *People v Starr,* 457 Mich 490, 499-500; 577 NW2d 673 (1998). Accordingly, we find no error in the trial court's examination of the balance between the prejudicial nature and the probative value of the evidence.

IV

Defendant's fourth and final argument is that misconduct on the part of the prosecution denied him a fair trial. Again, we disagree. As we have just concluded, the other acts evidence was properly admitted, so it cannot serve as the basis of a claim of prosecutorial misconduct. Further, defendant opened the door to the questioning of a woman with whom he had a sexual relationship about the nature of that relationship. As for remarks made by the prosecution during closing arguments about defendant's past, this too was a door opened by defendant, this time during his closing argument to the jury. We read the prosecution's comments, now challenged on appeal but

unobjected to below, as properly responsive to comments made by defense counsel.

Affirmed.

GRIFFIN, J., concurred.

M. J. KELLY, J. (*dissenting*). I respectfully dissent. I believe the trial court abused its discretion in permitting the children to testify by videotape and in admitting other acts testimony under MRE 404(b)(1). I would reverse.

While the children's mothers testified that the children were afraid of defendant and of the courtroom setting, the children themselves did not testify at the hearing that they would be unable to testify in defendant's presence. The record belies the prosecutor's claim that the children were unable to testify in the courtroom setting. Significantly, following their testimony, the children were able to confront defendant in face-to-face encounters and identify him. As defendant points out, the court itself noted that the children did not have difficulty doing so. Thereafter, the court expressed concerns about the fact that the children had been allowed to testify by giving videotaped depositions. Given that the children were able to testify in a courtroom setting and were able to confront defendant personally, it appears that the children should have been required to testify in defendant's presence. Therefore, I believe the use of videotaped testimony violated the defendant's right to confrontation and mandates reversal unless the state has shown that the error was harmless beyond a reasonable doubt. *Hoversten v Iowa*, 998 F2d 614, 617 (CA 8, 1993). All testimony from witnesses permitted to testify outside the defendant's presence must be dis-

counted, and harmlessness must be determined on the basis of the remaining evidence. *Coy v Iowa*, 487 US 1012, 1022; 108 S Ct 2798; 101 L Ed 2d 857 (1988). This case involved a credibility contest and turned on whether the jury believed the children's testimony. Under these circumstances, the Confrontation Clause violation cannot be deemed harmless.

Regarding the other acts testimony, MRE 404(b) provides:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

To be admissible under MRE 404(b), bad acts evidence must satisfy three requirements: (1) it must be offered for a proper purpose, (2) it must be relevant, and (3) its probative value must not be substantially outweighed by its potential for unfair prejudice. A proper purpose is one other than establishing the defendant's character to show his propensity to commit the offense. *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998); *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), mod 445 Mich 1205 (1994). The prosecutor bears the burden of establishing relevance. *People v Crawford*, 458 Mich 376, 385; 582 NW2d 785 (1998). Use of bad acts as evidence of character is excluded, except as allowed by MRE 404(b), to avoid the danger of conviction based on a defendant's history of misconduct. *Starr, supra* at

495; *People v Golochowicz*, 413 Mich 298, 308; 319 NW2d 518 (1982). Upon request, the trial court must provide a limiting instruction concerning the use of bad acts evidence regardless of whether the evidence was introduced by the prosecutor or the defendant. *Starr, supra* at 498; *VanderVliet, supra* at 75. If evidence of a defendant's bad acts is admitted for a limited purpose, a prosecutor deprives the defendant of a fair trial if he argues that a jury should consider the evidence for a different purpose. *People v Quinn*, 194 Mich App 250, 253; 486 NW2d 139 (1992).

In this case, the prosecutor argued for the admission of the similar acts testimony of two witnesses to show a scheme, intent, opportunity, or motive, and "to negate the possibility of a mistake." The trial court ruled that the other acts testimony was conditionally relevant to "motive, intention, scheme, plan, knowledge, absence of mistake and absence of accident." In finding that the probative value of the testimony was not substantially outweighed by unfair prejudice under MRE 403, the trial court remarked that, given that defendant denied the charges against him, "absence of mistake, absence of accident" were "perhaps not least important, maybe even more important" than "motive, scheme, plan, knowledge." Before allowing the introduction of the challenged other acts testimony, the trial court gave the following limiting instruction:

> Members of the jury, you may shortly hear evidence that is introduced to show that the defendant committed a crime or improper acts for which he is not on trial. If you believe this evidence, you must be very careful to only consider it for certain purposes. You may only think about whether this evidence to [sic] show that the defendant specifically meant

to engage in sexual acts with a person under age 13. That
the defendant acted purposefully, that is not by accident or
mistake, or because he misjudged the situation. That the
defendant used a plan, a system, or characteristic scheme
that he has used before or since. Members of the jury, you
must not consider this evidence for any other purpose, for
example, you must not decide that it shows the defendant
as a bad person, or that he is likely to commit crimes.

As the prosecutor correctly argues, identity was a
material fact in issue in the face of defendant's denial
that he was responsible for the sexual abuse of the
children in this case. To establish identity on the basis
of a common scheme or plan, the prosecutor intro-
duced the other acts testimony of two witnesses to
show that defendant "acted according to a certain
modus operandi that also was followed in the com-
mission of the charged offense[s]." *People v Engel-
man*, 434 Mich 204, 236-237; 453 NW2d 656 (1990).
According to the prosecutor, defendant's modus oper-
andi was characterized by befriending victims under
the age of ten and their parents over a period, by
seeking an opportunity to be alone with the victim,
usually in a room in the family home, and by touching
or fondling the child's "private spot" with his fingers
or by setting the child on his lap to arouse himself. In
my view, the claimed plan of befriending and then
abusing young children does not amount to a "certain
modus operandi" sufficient to support the admission
of the other acts testimony. The other acts evidence
in this case lacked any "special quality or circum-
stance" as to be like a "signature" of defendant under
*VanderVliet* and *Golochowicz*. The prosecutor did not
establish with specificity that defendant followed a
certain modus operandi in the commission of the
offenses. Even if the other acts evidence were admis-

sible to show "absence of mistake or accident," I believe the trial court erred in concluding that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence.

I would reverse.