# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ARTHUR LAROME JEMISON,

        Defendant-Appellant.

UNPUBLISHED
April 12, 2018

No. 334024
Wayne Circuit Court
LC No. 15-010216-01-FC

Before: SAWYER, P.J., and HOEKSTRA and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction first-degree criminal sexual conduct ("CSC-I"), MCL 750.520b (multiple variables). Defendant was sentenced to 22 to 40 years' imprisonment. We affirm.

## I. EXCLUSION OF EVIDENCE

Defendant argues that he was denied the opportunity to present a defense of consent, and denied his right to confrontation, because the trial court chose to exclude evidence that he had a subsequent consensual sexual relationship with the victim. We disagree.

"This Court reviews de novo both constitutional claims and preliminary questions of law regarding admissibility of evidence." *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). "Generally, a trial court's decision whether to admit evidence is reviewed for an abuse of discretion." *People v Dabb*, 481 Mich 899, 900; 750 NW2d 166 (2008). An abuse of discretion occurs where the trial court chooses an outcome that falls outside the principled range of outcomes. *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016).

This case arises out of the victim's sexual assault in 1996. At that time, the victim was unable to identify her attacker because she had not been able to see his face on the day that she was sexually assaulted. The victim completed a rape kit after the sexual assault, but the rape kit was not tested until 2015, as a result of efforts to test backlogged rape kits and identify sex offenders through DNA evidence. At trial, it was revealed that defendant and the victim had met each other in 2000, because the victim's sister shared children with defendant's brother. The victim did not recognize defendant as her attacker in 2000, and proceeded to engage in a consensual sexual relationship with him. The victim was not aware that defendant was the man

-1-

who sexually assaulted her until the results of her rape kit were delivered to the Detroit Police Department in 2015.

At a hearing regarding a motion to exclude evidence filed by the prosecution, the prosecution requested the exclusion of evidence that defendant and the victim engaged in consensual sex in 2000. The prosecution argued that the evidence was prejudicial, and that it was not relevant to the question whether defendant sexually assaulted the victim in 1996. The prosecution further argued that the victim did not know defendant when he sexually assaulted her in 1996:

> *The Court*: Then when she saw the single picture [of defendant] she says, "Now I remember that's him because I had a relationship with him before."

> *Ms. Lozen* [the prosecution]: That's correct. But again she did not identify him as her rapist. She identified him as a man that she had sex with later on.

> I'm saying it's unfairly prejudicial to her, and that's what the rape shield is all about is to not—it's not relevant because who cares if they had sex later on? The fact remains is what happened in 1996.

> *The Court*: You mean who cares if they had previous sex.

> *Ms. Lozen*: I'm sorry?

> *The Court*: You mean who cares if they had previous sex. You said, "if they had sex later on."

> *Ms. Lozen*: Well, Judge—

> *The Court*: The sexual encounter—the consensual sex came first, right?

> *Ms. Lozen*: No. The consensual sex came later . . . . The assault happened in 1996, and then the consensual sex happened in 2000 . . . . [A]nd [defendant] also acknowledged not knowing [the victim] in 1996.

Michigan's rape-shield statute provides:

(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted . . . unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease. [*Duenaz*, 306 Mich App at 91, quoting MCL 750.520j.]

The rape-shield statute "bars, with two narrow exceptions, evidence of all sexual activity by the complainant not incident to the alleged rape." *Id*. (quotation and citation omitted). The evidence that the prosecution sought to exclude herein concerned "evidence of the victim's past sexual conduct with the actor." *Id*.; MCL 750.520j(1)(a). However, the evidence did not constitute "past sexual conduct" in the traditional sense. Generally, "past sexual conduct" would include consensual sex that occurred *prior* to a victim's sexual assault. Here, the phrase must be applied to consensual sex that occurred *following* the victim's sexual assault.

In *People v Adair*, 452 Mich 473; 550 NW2d 505 (1996), the Michigan Supreme Court held that the term "past sexual conduct," as used in the rape-shield law, "refers to conduct that occurred before the evidence is offered at trial," meaning that consensual sex between a defendant and a victim that happens after the defendant has sexually assaulted the victim is not per se inadmissible. *Id*. at 473, 482-483. However, *Adair* primarily contemplates the use of the rape-shield statute in determining the admissibility of evidence in marital rape cases, where an individual may sexually assault his or her spouse on one day, but then have consensual sex with the spouse following the incident. *Id*. at 486. *Adair* does not stand for the notion that every instance of consensual sex between a defendant and victim are immediately admissible. *Id*. The probative value of the evidence must still be weighed against its potential prejudicial effect. *Id*.

Defendant argues that he was unable to establish the defense of consent because he was not permitted to use the evidence that he had consensual sex with the victim in 2000. However, defendant's main argument at trial was that he had consensual sex with the victim in 1996. Defendant argues that the evidence that he and the victim engaged in consensual sex in 2000 would have shown that it was more likely than not that the victim knew him in 1996, and thus, that it was more likely than not that she consented to sex in 1996.

Defendant bases his claim on *Adair*, 452 Mich at 453. However, the facts of *Adair* involve marital rape, and thus, *Adair*'s analysis presupposes that the defendant's identity is known to the victim. Comparatively, defendant's case is somewhat unusual because the victim's knowledge of defendant's identity in 1996 is contested. The victim stated that she did not know defendant in 1996, and the prosecution introduced evidence to support that fact, including her own testimony, and testimony from her sister, who stated that the victim did not meet defendant prior to the year 2000. Additionally, the victim testified that she was unaware of her attacker's identity until she was shown a picture of defendant in 2015 and realized that she recognized him as her niece's uncle. The victim did not know defendant was her rapist until police informed her that defendant's DNA had been matched to the DNA found in her rape kit. Evidence that the victim and defendant had consensual sex in 2000, four years after she was sexually assaulted, does not resolve the question whether she knew defendant in 1996, which is ultimately at issue herein. Without further evidence to establish that the victim knew defendant in 1996, the fact that she and defendant had sex in 2000 is not sufficiently probative to show that she knew his identity in 1996, and by extension, that she could have had consensual sex with him.

In the absence of further supporting evidence that the victim knew defendant's identity in 1996, the probative value of the evidence is outweighed by the danger of unfair prejudice to the victim. The "circumstances and nature of the relationship between the complainant and the defendant" must be taken into careful consideration." *Adair*, 452 Mich at 487. In defendant's case, the circumstances and nature of the relationship between defendant and the victim have not been sufficiently established, and if this evidence had been admitted, any connection that could have been drawn between the two incidents would have been far too prejudicial in nature. The prejudicial nature of such salacious and potentially confusing evidence outweighs its potential probative value.

"[I]nquiries into sex histories, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury . . . . [T]he trial court should limit the scope of sexual conduct evidence where constitutionally possible." *Id*. at 480, 487. Given the fact that the chronological sequence of events confused even the trial court, the admission of the evidence may also have prejudiced the victim by causing confusion to the jury. The evidence was not necessary for defendant to argue a consent defense, and it was more prejudicial to the victim than it was probative to defendant. The exclusion of the evidence did not violate defendant's right to confrontation. Accordingly, defendant's claim is without merit.

## II. CONFRONTATION OF WITNESSES

Defendant argues that the trial court violated his right to confront the witnesses against him by allowing an expert witness to testify via two-way interactive video technology over his objection under MCR 6.006(C). We agree, but find that the error was harmless.

"The constitutional question whether defendant was denied [his] constitutional right to confront the witnesses against [him] is reviewed de novo." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). With regard to MCR 6.006, the " '[i]nterpretation of a court rule is a question of law that this Court reviews de novo.' " *People v Lacalamita*, 286 Mich App 467, 472; 780 NW2d 311 (2009) (citation omitted). Additionally, "[b]ecause a trial court may use two-way interactive video technology to take testimony from a person at another location . . . the decision to do so is reviewed for an abuse of discretion." *People v Buie*, 491 Mich 294, 319-320; 817 NW2d 33 (2012) (citation and quotation omitted). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id*. at 320.

The prosecution used Skype, a real-time, two-way interactive videoconferencing service, to allow the expert witness to testify. The expert witness was able to see the courtroom, and the trial judge, the parties, and the jury were able to see the expert witness. On two occasions prior to the expert's testimony, defendant objected to the use of two-way interactive video technology. At a hearing regarding the prosecution's motion in limine to address pretrial issues, defendant stated:

> All experts, any expert in a case I'm not going to stipulate to being done by video. There are reports and physical evidence they may have to look at and explain and that simply can't be done via video. So, any type of video conferencing—this is a courtroom, my client has a right to have all of his witnesses appear in court. We

would not stipulate or waive the presence of any witness in court, especially the experts.

Additionally, immediately before the expert witness testified, defendant renewed his objection to the use of video testimony: "The court rule that I'm citing is [MCR] 6.006, video and audio proceedings, and it's sub[section] C, section two . . . . [T]his has to be done with [defendant's] consent and . . . I don't do Skype for expert testimony."

Defendant argues that this Court must reverse his conviction because his right to confrontation was violated by the trial court's refusal to follow MCR 6.006(C). The Confrontation Clause consists of four requirements:

> (1) a face-to-face-meeting of the defendant and the witnesses against him at trial; (2) the witnesses should be competent to testify and their testimony is to be given under oath or affirmation, thereby impressing upon them the seriousness of the matter; (3) the witnesses are subject to cross-examination; and (4) the trier of fact is afforded the opportunity to observe the witnesses' demeanor. [*People v Pesquera*, 244 Mich App 305, 309; 625 NW2d 407 (2001) (citation omitted).]

The expert witness testified under oath, and the jury was able to observe him while he testified. Additionally, defendant cross-examined the expert witness via the two-way interactive video feed. The trial court's adherence to the three major criteria of the Confrontation Clause somewhat undermines defendant's argument that he was denied the right to confrontation. However, defendant is concerned primarily with the right to confront witnesses face-to-face.

The Confrontation Clause guarantees that the defendant will be permitted the opportunity to examine witnesses in person, but " 'the face-to-face confrontation requirement is not absolute.' " *Buie*, 491 Mich at 304, quoting *Maryland v Craig*, 497 US 836, 850; 110 S Ct 3157; 111 L Ed 2d 666 (1990). The preference for face-to-face confrontations " 'must occasionally give way to considerations of public policy and the necessities of the case.' " *Pesquera*, 244 Mich App at 309 (citation omitted). The expert witness was testifying from Salt Lake City, Utah, regarding his findings from the victim's rape kit. It would have been costly and difficult for the expert witness to appear in person at trial. Thus, if the expert were to testify, two-way interactive video technology was a necessity.

The trial court must make a case-specific finding that it is necessary to dispense with the face-to-face aspect of confrontation. *Id.* at 310. The trial court's findings herein focused on the fact that it was relatively simple to take testimony from an expert witness via two-way interactive video technology:

> [U]sually a lay witness it's very difficult having a video, but of an expert witness where all emotions are gone, that is admissible.

> * * *

> Anything that has to be shown to [the expert witness] can be shown to him. They have the different electronic devices [to aid] in passing [the evidence] back and forth.

Although the trial court did not speak at length, it found that allowing the expert witness to testify via Skype would be appropriate because the two-way interactive video feed would allow the expert witness to view and respond to questions and evidence in real time. Thus, although defendant was not able to confront the witness in the traditional sense, the trial court found that allowing the expert witness to testify via Skype was a reasonable substitute, given his inability to attend in person. Defendant was given the opportunity to observe the expert's responses and reactions in real time and took advantage of the opportunity to do so through cross-examination. The jury was able to observe the expert as he responded to questions. Because the testimony met three of the Confrontation Clause criteria, and the trial court appropriately dispensed with the face-to-face requirement, defendant's right to confrontation was not violated.

Defendant next argues that the trial court's decision to overrule his objection violated MCR 6.006(C).

MCR 6.006(C), which governs the use of technology in the courtroom, provides that two-way interactive video technology may only be used with the consent of the parties during trial. MCR 6.006(C); *Buie*, 491 Mich at 318. The definition of "party," as defined in *Buie*, "encompasses both the lawyer and the client . . . . Thus, if either the defendant or counsel objects, the "party" cannot be said to have consented." *Id*. Defense counsel strongly objected to the use of two-way interactive video technology, and cited MCR 6.006(C). MCR 6.006(C) provides:

> Defendant in the Courtroom--Other Proceedings: As long as the defendant is either present in the courtroom or has waived the right to be present, upon a showing of good cause, district and circuit courts may use videoconferencing technology to take testimony from a person at another location in the following proceedings:
>
> (1) evidentiary hearings, competency hearings, sentencings, probation revocation proceedings, and proceedings to revoke a sentence that does not entail an adjudication of guilt, such as youthful trainee status;
>
> (2) with the consent of the parties, trials. A party who does not consent to the use of videoconferencing technology to take testimony from a person at trial shall not be required to articulate any reason for not consenting. [*Buie*, 491 Mich at 318, quoting MCR 6.006(C).]

"When interpreting a court rule, this Court applies the same rules as when we engage in statutory interpretation . . . . If the language of the court rule is clear and unambiguous, then no further interpretation is required or allowed." *Lacalamita*, 386 Mich App at 314-315. The trial court overruled defendant's objection under MCR 6.006(C), and allowed the expert witness to testify via two-way interactive video technology. Defendant did not consent to the use of two-way interactive video technology at trial, and thus, in accordance with MCR 6.006(C), the trial court abused its discretion by allowing the testimony to be given through two-way interactive video technology over defendant's objection.

However, despite the trial court's abuse of discretion, "an error does not justify disturbing a judgment unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 6.213(A); *People v Jackson*, 487 Mich 783, 801 n 36; 790 NW2d 340 (2010). Errors related to the Confrontation Clause are nonstructural defects. *People v Shepherd*, 472 Mich 343, 347; 697 NW2d 144 (2005). Rather than requiring automatic reversal, Confrontation Clause errors are subject to harmless error analysis. Therefore, "when a trial court commits an error that denies a defendant his constitutional rights under the Confrontation Clause . . . we need not reverse if the error is harmless beyond a reasonable doubt." *People v McPherson*, 263 Mich App 124, 131-132; 687 NW2d 370 (2004). The expert witness was called to testify to a report that merely indicated that he had processed the victim's rape kit and found evidence of male DNA. The expert witness was not responsible for matching the DNA to defendant. The Michigan State Police Crime Laboratory ("MSP Crime Lab") matched the DNA to defendant's entry in the combined DNA index system ("CODIS") database, and the prosecution called an expert witness from the MSP Crime Lab, who testified in person during trial regarding the process that she used to identify defendant using his DNA profile and CODIS. The expert witness at issue herein did not play a substantial role in the identification of defendant, and the trial court's decision to allow him to testify via two-way interactive video technology does not constitute error requiring reversal. Accordingly, defendant's claim must fail.

Affirmed.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra