*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

WILLIE LAMONT CLAUDE WASHINGTON,

       Defendant-Appellant.

UNPUBLISHED
June 4, 2020

No. 347013
Macomb Circuit Court
LC No. 2018-000676-FC

Before: LETICA, P.J., AND STEPHENS AND O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (victim under 13, defendant 17 years of age or older), and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under 13, defendant 17 years of age or older). Defendant was sentenced, as a second habitual offender, MCL 769.10, to 25 to 49 years' imprisonment for his CSC-I conviction, and to 7½ to 22½ years' imprisonment for his CSC-II conviction. We affirm. This appeal has been decided without oral argument pursuant to MCR 7.214(E).

## I. BACKGROUND

The instant case arises out of two sexual assaults defendant committed against the victim during the summer of 2012. The prosecution also presented evidence of similar acts that defendant committed previously.

### A. CURRENT VICTIM

The current victim's household included the victim's mother and defendant. The victim's mother and defendant were in a dating relationship from 2009 through 2012. There were occasions when defendant was home alone with the victim. The victim considered defendant to be a father figure. In the summer of 2012, the victim was 10 years old and participated in gymnastics. On one occasion, after the victim came home from gymnastics practice, defendant assisted her with a stretching exercise on the living room floor. The victim was on her back with her legs open in a V-shaped position. Defendant was on his knees and leaning over the victim, pushing her leg down

-1-

with his left hand, and placing his right hand by her right knee. Defendant's left hand remained on the victim's leg when he placed his right hand on her leotard and over her vaginal area and rubbed his fingers up and down. Defendant did not speak to the victim. And although the victim's mother was home, she was not in the room. The victim went upstairs to her room and then went to her mother to report defendant's assault. Thereafter, the victim assumed that her mother had confronted defendant because she heard them arguing. At trial, the victim's mother testified that she did not confront defendant because she was afraid. Instead, she moved forward with her pre-existing plan to leave.

Two weeks later, when the victim's mother was out, defendant assisted the victim with stretching exercises again. The victim came home from gymnastics practice, again wearing her leotard, when defendant asked permission to help her with a stretch. While the victim was on her back with her legs in a V-shaped position and defendant was on his knees and leaning over her, he moved her clothing to the side with his right hand and digitally penetrated her vagina. Again, defendant did not speak to her during this.

Within a few weeks of the victim's initial report, the victim and her mother moved out of their leased apartment without defendant even though the lease had not expired. In September 2017, the victim disclosed defendant's second assault to her mother. Within days, they reported defendant's assaults to the police.

## B. OTHER-ACTS EVIDENCE

The prosecution also filed a notice that it would present other-acts evidence of defendant's uncharged sexual misconduct against two other minor victims, JN and AJ.[1]

From 2004 to 2009, JN's mother and defendant were in a dating relationship. Defendant resided with JN and her mother for approximately three to four years, and attempted to act as a stepfather to JN. When JN was about 12 years old, JN, her mother, and defendant were in JN's bedroom, playing and tickling each other. JN's mother left the bedroom, but defendant continued to sit on JN's bed. As JN moved to get up from her bed, defendant pulled on her arm and forced her to sit on his lap. Defendant groped JN from the side of her thighs to near her buttocks area, over her clothes. As JN went to stand up, defendant touched her breasts with his hands, again over JN's clothes. When JN was in the tenth grade, she told her high-school peers about this incident. Later, JN told her grandmother, and, thereafter, her mother.

AJ is defendant's biological daughter. Around Thanksgiving of 2005, when AJ was 16 years old, she visited defendant at his home. AJ and defendant went to the basement, sat in separate chairs, and talked. No one else was present. Defendant told AJ to come over to where he was sitting. AJ complied and sat on defendant's lap, on top of one of his legs in a sideways position. AJ knew defendant had become aroused when he told her to look at what she did. Defendant told AJ he did not think she knew about sex, took AJ to a couch, and positioned AJ on her back. Defendant lifted up AJ's t-shirt, pulled down her underwear, and rubbed her vaginal area with his fingers. Defendant told AJ that he could not "wait to taste it." When AJ began to cry, defendant

---

[1] Initially, the prosecution listed a third minor in its notice, but later opted to withdraw that name.

threatened AJ, telling her that she should take what he had done "to [her] grave," and, if she did not, he would kill her and her mother.

The prosecution argued that this evidence demonstrated defendant's propensity to seek sexual gratification from young girls, which was probative of defendant's sexual interest in children and the current victim's credibility. Defendant moved to exclude the evidence. After a hearing, the trial court determined that the evidence was admissible under MCL 768.27a after concluding that it was not substantially more prejudicial than probative under MRE 403.

At trial, the victim, JN, and AJ testified. The current victim's mother and AJ's mother also testified.

AJ testified that she disclosed defendant's sexual assault to a school counselor a few months after it took place. Children's Protective Services (CPS) went to AJ's home and AJ had to tell her mother. AJ's mother verified that two CPS workers came to talk to her on April 6, 2006. AJ's mother also testified that she never called the police to report the matter because she thought CPS would.

The parties stipulated that the CPS report concluded:

No preponderance. This case is being denied. No preponderance of the evidence as allegations cannot be proven at this time.

AJ did not see defendant for years. Defendant then came into the store where AJ worked, and, eventually, she forgave him. Later, defendant was helping AJ move. They argued, and, according to AJ, stopped communicating, although defendant brought over Christmas gifts for his grandchildren in 2017.

Defendant also testified at trial. Defendant denied sexually assaulting the current victim. Although he admitted that he had assisted her with her gymnastic stretches, he testified that he was never alone with her and, instead, her mother was always present. And defendant did not even move in with the victim and her mother until September 2012. Defendant's sister supported his testimony by testifying that defendant moved out of her residence and into the victim's mother's apartment in September or October 2012. Defendant's sister also specifically recalled that the victim and her mother attended her 2012 Christmas sleep-over party, an event which the victim recalled.

Defendant testified that he did not move out of the apartment he shared with the victim and her mother until June or July, 2013, after he had suffered his third heart attack in April 2013. Defendant did not know why the current victim had falsely accused him of sexual assault because they had a great relationship.

Defendant also denied that he had any contact with AJ in 2005. In the summer of 2006, however, he did have contact with AJ, but he denied that anything sexual had happened between them. In the fall of 2017, defendant agreed that he was helping AJ move when, according to him, AJ swore at him, called him names, assaulted him, and, then, accused him of raping her. Defendant replied, "oh okay" and drove away in his vehicle. Thereafter, defendant did not speak to AJ, other than dropping off Christmas gifts to his grandchildren after receiving AJ's permission.

Defendant also denied that he sexually assaulted JN.

The court provided a limiting instruction regarding the prior-act evidence of AJ and JN. The jury thereafter convicted defendant of sexually assaulting the victim.

This appeal followed.

## II. DISCUSSION

The only issue defendant raises on appeal is whether the trial court abused its discretion by failing to conduct the proper MRE 403 analysis under MCL 768.27a before it admitted testimony from JN and AJ. Defendant maintains that the incidents JN and AJ described never occurred. However, assuming that JN and AJ's testimony about the other-acts evidence was admissible under MCL 768.27a, defendant contends that it should have been excluded under MRE 403, because its probative value was substantially outweighed by the risk of unfair prejudice. We disagree.

### A. STANDARD OF REVIEW

We "review for an abuse of discretion a trial court's decision to admit or exclude evidence," and review de novo any preliminary legal questions of law. *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010). "A trial court's discretionary decisions concerning whether to admit or exclude evidence will not be disturbed absent an abuse of that discretion." *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010) (quotation marks omitted). "An abuse of discretion is found when the trial court's decision falls outside the range of reasonable and principled outcomes." *People v Solloway*, 316 Mich App 174, 191-192; 891 NW2d 255 (2016). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). "[A] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011) (quotation marks omitted).

### B. ANALYSIS

We conclude that the other-acts evidence regarding JN and AJ was admissible under MCL 768.27a, and not unduly prejudicial under MRE 403.

Generally, in a criminal trial, MRE 404(b)(1) provides that the prosecution is precluded from introducing "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." However, when a defendant is charged with a sexual offense against a minor, the admissibility of evidence pertaining to his commission of other uncharged sexual offenses against a minor is governed by MCL 768.27a, which provides:

> (1) Notwithstanding [MCL 768.27], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of

-4-

trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

(2) As used in this section:

(a) "Listed offense" means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.

(b) "Minor" means an individual less than 18 years of age. [*Id*. (footnote omitted).]

Thus, "MCL 768.27a allows the admission of other-acts evidence to demonstrate the likelihood of a defendant's criminal sexual behavior toward other minors." *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007). Where MCL 768.27a applies, "it supersedes MRE 404(b)." *People v Watkins*, 491 Mich 450, 476-477, 818 NW2d 296 (2012). Importantly, evidence admissible under MCL 768.27a remains subject to exclusion under MRE 403. *Id*. at 496 ("[E]vidence admissible under MCL 768.27a remains subject to MRE 403 . . . however, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect."). In turn, MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." However, "other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Watkins*, 491 Mich at 487; *People v Duenaz*, 306 Mich App 85, 99; 854 NW2d 531 (2014). To determine whether other-acts evidence should "be excluded under MRE 403 as overly prejudicial," a trial court may consider the following nonexhaustive list of factors:

(1) [T]he dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

Finally, a "trial court, upon request, may provide a limiting instruction under MRE 105." *People v Sabin (On Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). MRE 105 provides: "When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

Defendant does not dispute that the testimony provided by JN and AJ qualified for admission under MCL 768.27a(1). Instead, he argues that the trial court abused its discretion in admitting this evidence because proper consideration of the *Watkins* factors demonstrates it was substantially more prejudicial than probative under MRE 403. We disagree.

## 1. DISSIMILARITY BETWEEN THE OTHER ACTS AND THE CHARGED CRIME

Defendant contends that the assaults involving JN and AJ were not like the acts committed against the victim. We disagree.

As to JN, defendant argues one difference—defendant pulled JN to him. The record, however, supports a finding that defendant's incidents with the current victim were similar to defendant's incident with JN. The victim and JN were minors and alone with defendant when he sexually assaulted them. The victim and JN had a familial-type relationship with defendant at the time of his sexual assaults. Defendant engaged in innocent and permissive touching of the victim and JN before sexually assaulting them. Thus, the similarities between defendant's other acts and the charged crimes against the current victim, JN's testimony demonstrated the likelihood of defendant's criminal sexual behavior with the victim. *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008) ("A defendant's propensity to commit criminal sexual behavior can be relevant and admissible under the statutory rule to demonstrate the likelihood of the defendant committing criminal sexual behavior toward another minor.").

Likewise, defendant's interactions with AJ were similar to his interactions with the current victim. The victim and AJ were minors and defendant was AJ's father and served as a stepfather figure for the current victim. Defendant engaged in innocent and permissive touching of the victim and AJ shortly before the sexual assaults occurred. Defendant made similar sexual contact with the victim and AJ when they were alone with him.

However, as defendant mentions, there are some contrasts between defendant's behavior toward the two victims. For example, defendant made sexual statements to AJ during the assault and threatened to kill AJ and her mother if AJ reported the assault. Moreover, defendant acted more forcefully with AJ, moving her, positioning her, and pulling down her clothing. In contrast, defendant did not speak to the current victim and slipped his hand onto her vaginal area either over or under her clothes after moving them. Despite these differences, defendant's earlier conduct and the charged offenses need only be "of the same general category[.]" *Duenaz*, 306 Mich App at 101 (quotation marks omitted). For instance, different degrees of sexual assaults, and even attempted sexual assaults, are offenses of the same general category. *Id*. (stating that a prior act of attempted molestation is of the same general category as CSC-I and CSC-II). Therefore, AJ's testimony, which clearly indicated a similarity between defendant's assault toward her and the instant assault, demonstrated the likelihood that defendant's criminal sexual behavior with the victim occurred. *Petri*, 279 Mich App at 411. Consequently, these slight differences in conduct during the two incidents did not substantially outweigh the probative value of AJ's testimony.

## 2. THE TEMPORAL PROXIMITY OF THE OTHER ACTS TO THE CHARGED CRIME

Defendant next argues that the temporal gaps between the assaults are factors that should weigh in favor of finding unfair prejudice. Again, the record belies this contention. There was about a three-year gap between the charged crimes and the sexual contact with JN, and approximately a seven-year gap between the charged crimes and the sexual contact with AJ. The temporal proximity of defendant's other acts with JN and AJ to the charged crimes does not make the other-acts evidence less probative, as they added credibility to the victim's version of the events in this case. See *Mann*, 288 Mich App at 116-118. Despite these gaps, the trial court found the

other-acts evidence to be highly relevant to the charges in this case, given the close familial or familial-like relationship that defendant had with all of the victims and the similar circumstances under which the assaults occurred. We find no error in this analysis. Moreover, we have previously held that "[t]he remoteness of the other act affects the weight of the evidence rather than its admissibility." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). Therefore, defendant was not substantially prejudiced by admission of the other-acts evidence.

### 3. THE INFREQUENCY OF THE OTHER ACTS

Defendant is correct that the acts appear to have occurred infrequently. The act with AJ took place in November 2005 and the act with JN occurred in 2009. However, they were sufficiently similar to defendant's sexual assault of the current victim so that the trial court was not required to exclude them on this basis. *Watkins*, 491 Mich at 487.

### 4. THE PRESENCE OF INTERVENING ACTS

Defendant asserts that his moves along with his heart attacks and surgeries were intervening acts that weighed against the admissibility of the other-acts evidence. The record demonstrates that defendant moved around and that he had his first heart attack in 2010, two years before the assault of the current victim, and a third heart attack approximately a year after the assault of the current victim. Defendant's heart issues arose after his alleged assaults of AJ and JN. Notably, defendant fails to explain how his moves, heart attacks, or alleged surgeries constituted intervening acts. By giving cursory treatment to this argument, defendant has abandoned it. *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). In any event, we do not agree that defendant's moves and heart attacks constituted "intervening acts" that distinguished his assaults of the current victim from those involving JN and AJ. Thus, we conclude that defendant's moves and subsequent physical condition do not weigh against the admissibility of the other-acts evidence. *Watkins*, 491 Mich at 487-488.

### 5. THE LACK OF RELIABILITY OF THE EVIDENCE SUPPORTING THE OCCURRENCE OF THE OTHER ACTS

As defendant maintains that he committed no sexual assaults against JN and AJ, he also contends that their testimony lacked reliability. More specifically, defendant asserts that JN's testimony lacked reliability because she did not report the sexual contact to her mother or to anyone in a timely manner. However, our Supreme Court has repeatedly recognized the propriety of admitting expert testimony to explain the phenomenon of "delayed reporting" in sexual assault cases involving young victims. See, e.g., *People v Kowalski*, 492 Mich 106, 123-124; 821 NW2d 14 (2012); *People v Peterson*, 450 Mich 349, 352-353; 537 NW2d 857 (1995); *People v Beckley*, 434 Mich 691, 716-717; 456 NW2d 391 (1990). Here, JN did not tell anyone about the sexual assault for several years and she testified at trial that she did not tell her mother because she felt ashamed. Recognizing that sexual-assault victims, especially children, may feel shame and may fail to immediately report such an assault, we cannot conclude that JN's delay in reporting in this case rendered her report unreliable.

Turning to AJ's testimony, defendant contends it lacked reliability because the CPS investigation did not result in a complaint, but, instead, ended with a determination that the incident

was not substantiated. As previously discussed, the assault involving AJ took place in November 2005 and she reported it to a school counselor in April 2006. A CPS contact and report followed. The CPS report concluded that there was "[n]o preponderance of the evidence as [the] allegations cannot be proven *at this time*." (Emphasis added.) Thus, rather than the CPS report suggesting that AJ's report was unreliable, as defendant suggests, the emphasized language may simply reflect CPS's recognition that there was no physical evidence to be gathered five months after the alleged assault. Moreover, given the inclusion of the limiting language in the CPS report, without inclusion of language or explanation calling into question the reliability of AJ's report, we reject defendant's contention that the CPS report alone requires preclusion of AJ's testimony in this case. See e.g., *People v Ali*, 328 Mich App 538, 545; 938 NW2d 783 (2019) ("it is improper for a court in a criminal case to give preclusive effect to findings made in a child protective proceeding.").

## 6. THE LACK OF NEED FOR EVIDENCE BEYOND THE COMPLAINANT'S AND THE DEFENDANT'S TESTIMONY

On this *Watkins* factor, defendant makes no argument. We note that this case involved questions regarding defendant's intent in touching the victim as to the first instance. Because there was no DNA, no recording of the events, or any eyewitnesses, this was not a case where other-acts evidence was unnecessary.

Finally, we note that defendant argues no other factors that would establish prejudice from the admission of the other-acts evidence. And, importantly, the trial court provided the jury with a limiting instruction, M Crim JI 20.28a, emphasizing that defendant was not charged or convicted of matters involving JN and AJ. "A final tool available for trial courts when admitting other-acts evidence under MCL 768.27a is CJI2d 20.28a,[2] the standard jury instruction on evidence of other acts of child sexual abuse[.]" *Watkins*, 491 Mich at 490 (footnote added). "In cases in which a trial court determines that MRE 403 does not prevent the admission of other-acts evidence under MCL 768.27a, this instruction is available to ensure that the jury properly employs that evidence." *Id*. "Jurors are presumed to follow their instructions." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Thus, the trial court limited the danger of unfair prejudice. *People v Pesquera*, 244 Mich App 305, 320; 625 NW2d 407 (2001) ("The limiting instruction given to the jury also served to limit the danger of unfair prejudice by restricting use of the evidence.").

In sum, we find no abuse of discretion in the trial court's determination to admit other-acts evidence regarding defendant's alleged prior sexual misconduct.

Affirmed.

/s/ Anica Letica
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien

---

[2] CJI2d 20.28a is now M Crim JI 20.28a.