# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

THOMAS ARTHUR LEMOINE,

Defendant-Appellant.

UNPUBLISHED
July 17, 2018

No. 336691
Alger Circuit Court
LC No. 2016-002188-FH

Before: CAMERON, P.J., and METER and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a), for which the trial court sentenced him as a second-offense habitual offender, MCL 769.10, to a prison term of 3 to 22-1/2 years. We affirm.

## I. FACTS

Defendant was convicted of sexually abusing HT, after she, her adoptive mother, and her brother moved into defendant's trailer home in Marquette County, Michigan. The adoptive mother had known defendant for several years. In July 2010, the adoptive mother and her two children relocated from Virginia to Marquette County. Defendant allowed them to move in with him until they could find a place to live. After the adoptive mother obtained employment in October 2010, defendant encouraged her to stay with him, and in 2012, she began traveling for work, usually for a week at a time. She took several trips from 2012 through 2014. Defendant, who had quit his job in December 2010, cared for the children in the adoptive mother's absence. She paid off the mortgage on defendant's trailer property and made approximately $65,000 in improvements to the property. She obtained a small mortgage to complete the improvements, and defendant put her name on the deed to secure her investment in the property.

According to HT, she would occasionally become frightened and would get into bed with defendant while her adoptive mother was away. HT testified that defendant began touching her inappropriately, both in his bedroom and in the bedroom she shared with the adoptive mother. Defendant would come into her bedroom, lie down next to her, pull her closer, and put his hand under her pajama tops and bottoms. Initially, he would touch HT's stomach and her breasts, but then he began touching her knee and thigh. HT testified that defendant then "started going in between [her] legs," first over her underwear, then touching her vagina underneath her underwear. Defendant touched her breasts and vagina multiple times. According to HT, this

-1-

occurred almost every time her adoptive mother was not there. In 2014, defendant took the children on a camping trip. According to HT, defendant touched her on four or five different occasions during the camping trip.[1] She testified that sometimes defendant touched her over her clothing, sometimes he unzipped her pajamas and touched her from her neck to her knee, and sometimes he touched her breasts and her vagina, both over and under her underwear. HT did not tell her adoptive mother about the sexual abuse right away because she did not want defendant to hurt her mother.

According to the adoptive mother, defendant moved out of the trailer in December 2014 and the two had a dispute about dividing the trailer property. After she contacted an attorney, she and defendant reached an agreement in July 2015 that she would "buy him out," but it took time to finalize the agreement. The adoptive mother learned about the sexual abuse in August 2015, but she did not report the abuse until December 2015, allegedly at the advice of her attorney who told her not to "muddy the waters" with two unrelated matters and to resolve the property dispute first.

At trial, the prosecution also introduced the testimony of TG, the daughter of defendant's ex-girlfriend, pursuant to MCL 768.27a. TG testified that she, her brother, and her mother lived with defendant for two or three years in the early 1990s. According to TG, when she was eight years old, defendant started touching her inappropriately. Initially, defendant touched her vagina both over and under her clothing. Eventually, he removed his pants and placed her on his lap while she remained fully clothed, and he moved her up and down. Later, he engaged her in oral sex. According to TG, the abuse happened every time her mother was not at home. TG disclosed the abuse when she was 14 years old. Although defendant was criminally charged with sexually abusing TG, he was acquitted in the early 2000s.

Defendant admitted that on occasion HT would get into bed with him, but denied that he ever touched her inappropriately. He moved out of the trailer in December 2014 when he began dating another woman. Defendant testified that he first learned about HT's allegations in December 2015, one month before the adoptive mother acquired legal title to the trailer property. He believed that the adoptive mother coached HT into making the allegations because of the civil dispute regarding the trailer property.

## II. OTHER-ACTS EVIDENCE

Defendant argues that the trial court erred in admitting TG's testimony that defendant sexually abused her in 1993. We disagree.

We review a trial court's decision regarding the admission of evidence for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

---

[1] Defendant's conviction was based on the sexual contact that occurred during the camping trip in Alger County. HT was permitted to testify regarding the other, uncharged sexual assaults pursuant to MCL 768.27a.

MCL 768.27a(1) provides, in relevant part, that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." TG's testimony involved acts of first-degree criminal sexual conduct and second-degree criminal sexual conduct, both of which are listed offenses. MCL 768.27a(2)(a); MCL 28.277(j), (w)(*iv*), and (w)(*v*). Evidence introduced under MCL 768.27a(1) may be considered for its bearing on any matter for which it is relevant, including "the likelihood of a defendant's criminal sexual behavior toward other minors." *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007). In other words, MCL 768.27a(1) allows for the admission of propensity evidence. See *People v Duenaz*, 306 Mich App 85, 99; 854 NW2d 531 (2014).

However, evidence otherwise admissible under MCL 768.27a(1) remains subject to exclusion under MRE 403. *People v Uribe*, 499 Mich 921, 922; 878 NW2d 474 (2016); *People v Watkins*, 491 Mich 450, 481-486; 818 NW2d 296 (2012). Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. When applying MRE 403 in the context of MCL 768.27a(1), the propensity inference must be weighed in favor of the evidence's probative value rather than in favor of its prejudicial effect. *Watkins*, 491 Mich at 456, 486-487, 496. The Court in *Watkins* provided the following illustrative, nonexhaustive list of factors that could result in exclusion of evidence under MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

If evidence is admissible for a relevant purpose pursuant to MCL 768.27a and is not excluded by MRE 403, a trial court can instruct the jury on how to consider the evidence "to ensure that the jury properly employs that evidence," *Watkins*, 491 Mich at 490, thereby mitigating any unfair prejudicial impact, *People v Pesquera*, 244 Mich App 305, 320; 625 NW2d 407 (2001).

Defendant complains that the trial court did not properly analyze the admissibility of TG's testimony under MRE 403. After a lengthy discussion between the trial court and the parties regarding the admissibility of TG's testimony, the trial court ruled:

> [T]he [c]ourt's reading of the *Watkins* matter takes the [c]ourt into the direction of the probative value versus the substantive being outweighed by unfair prejudice. Confusing or misleading of the jury standard that is there. And on a close call, this [c]ourt's going to allow that matter to come in with, of course, the acquittal commentary by Defense being a part and parcel of that particular matter. A very close call in the [c]ourt's mind, based on my reading of *Watkins*, but that will be the [c]ourt's decision on that particular point.

-3-

Although defendant complains about the brevity of the trial court's analysis, its ruling must be considered in the context of the parties' preceding arguments and the trial court's questions with respect to whether the probative value of the other-acts evidence was substantially outweighed by the danger of unfair prejudice. The trial court's comments reveal that it considered the *Watkins* factors and was not persuaded that the evidence should be excluded. There is no indication that the trial court misapplied MRE 403. Indeed, the trial court's comment that the issue was a "close call" and that the evidence would therefore be admitted reveals that it weighed the propensity inference in favor of the evidence's probative value.

Defendant does not dispute that TG's testimony was admissible under MCL 768.27a to demonstrate his propensity to engage in sexual activities with young female children left in his care. Applying the *Watkins* factors, the record reflects that the assaults were not so dissimilar as to diminish the probative value of TG's testimony in relation to its prejudicial effect. Both victims were similar in age when defendant sexually assaulted them. In both cases, the offenses were committed against victims who were living in defendant's household as he cared for them while their mothers were away. In both cases, the abuse began with touching. The fact that defendant engaged in additional sexual acts with TG that he did not engage in with HT does not make the acts so dissimilar that the probative value of the evidence was outweighed by the danger of unfair prejudice.

Although a "temporal divide" exists between the prior acts and the charged offense, the trial court was clearly aware that the other acts of abuse occurred approximately 20 years earlier. Given the similarity of the acts and the settings in which they occurred, the temporal divide between their occurrences, standing alone, would not preclude the evidence's admission. See *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 255 (2016). The passage of time can be viewed as simply a function of when victims of a similar age were accessible. Although defendant asserts that "there likely are numerous intervening acts that have shaped [TG's] testimony over time," he has offered no evidence to support this assertion.

Defendant maintains that his acquittal of the charges involving TG calls into question the reliability of her allegations. However, defendant's prior acquittal does not necessarily establish his innocence of the crime charged in that case, only that the prosecution failed to prove the charges beyond a reasonable doubt. See *People v Oliphant*, 399 Mich 472, 498 n 14; 250 NW2d 443 (1976). Notably, there is no requirement in MCL 768.27a that a listed offense must have resulted in a conviction to be admissible. Defendant has cited no authority for his argument that his prior acquittal renders the other-acts testimony unreliable. Conversely, other decisions have recognized that evidence of a defendant's prior acts may be admitted even if the defendant was acquitted of charges involving those acts. See *People v Gibson*, 219 Mich App 530, 533; 557 NW2d 141 (1996); cf. *People v Bolden*, 98 Mich App 452, 459-462; 296 NW2d 613 (1980).

Lastly, there was a need for evidence beyond HT's testimony. Although CSC-II can be proven simply on the basis of the victim's testimony, MCL 750.520h, HT's delay in reporting the abuse to her mother, as well as the lack of physical evidence, heightened the probative value of the evidence of the similar assaults against TG. See, e.g., *Duenaz*, 306 Mich App at 100.

In light of the foregoing, we agree that the *Watkins* factors weigh in favor of the admissibility of TG's testimony under MCL 768.27a. Therefore, the trial court did not abuse its

discretion by admitting the evidence. Additionally, the trial court instructed the jury on how to consider TG's testimony when it offered a jury instruction mirroring M Crim JI 20.28a. Because "[i]t is well established that jurors are presumed to follow their instructions," *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998), it can be presumed that this instruction mitigated any prejudicial effect of TG's testimony, *Pesquera*, 244 Mich App at 320.

## III. SCORING OFFENSE VARIABLE (OV) 13

Defendant argues that the trial court erred by assigning 25 points to the scoring of OV 13. We disagree.

In reviewing a defendant's claim that the trial court assigned an improper score to an offense variable, this Court reviews for clear error the trial court's factual determinations, which must be supported by a preponderance of the evidence. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

OV 13 considers whether there was a "continuing pattern of criminal behavior." MCL 777.43. *People v Carll*, ___ Mich ___; ___ NW2d ___ (2018) (Docket No. 336272); slip op p 7. The trial court is instructed to score OV 13 at 25 points when the "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). The statute further provides that "[f]or determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). If no pattern of felonious criminal activity existed, the trial court must score OV 13 at zero points. MCL 777.43(1)(g).

At trial, HT testified that defendant touched her multiple times beginning in 2012 when she was about eight years old and continuing until 2014. Although defendant seems to argue that HT's testimony concerning the assaults that occurred in Marquette County should not be considered because they were uncharged offenses, "[a] trial court may consider facts concerning uncharged offenses, pending charges, and even acquittals, provided that the defendant is afforded the opportunity to challenge the information and, if challenged, it is substantiated by a preponderance of the evidence." *People v Golba*, 273 Mich App 603, 614; 729 NW2d 916 (2007). HT's testimony provided a factual basis to support the trial court's scoring of OV 13, and defendant was provided with an opportunity to challenge her testimony. Thus, the trial court did not err in assessing 25 points for OV 13.

## IV. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which have merit.

## A. DISCOVERY

Defendant argues that the trial court abused its discretion when it denied his discovery request for an order compelling the Marquette County Prosecutor's Office to produce its

disposition record of its reasons for declining to prosecute defendant for the sexual offenses against HT that occurred in Marquette County. We disagree.

The trial court denied the discovery motion because it concluded that the disposition record was protected from disclosure as attorney work product under *People v Gilmore*, 222 Mich App 442; 564 NW2d 158 (1997). Defendant does not dispute that the material qualifies as privileged, but argues that the trial court should have ordered that the material be provided for an in camera inspection by the court under MCR 6.201(C). We review a trial court's decision regarding a discovery motion for an abuse of discretion. *People v Freeman (After Remand)*, 406 Mich 514, 516; 280 NW2d 446 (1979).

"[D]iscovery in criminal cases is constrained by the limitations expressly set forth in the reciprocal criminal discovery rule promulgated by our Supreme Court, MCR 6.201."[2] *People v Greenfield*, 271 Mich App 442, 447; 722 NW2d 254 (2006). Our Supreme Court has plainly stated that MCR 6.201 governs and defines the scope of criminal discovery in Michigan. *People v Phillips*, 468 Mich 583, 587-589; 663 NW2d 463 (2003). "In clarifying what is subject to discovery under Michigan's criminal discovery rule, our Supreme Court [in *Phillips*] held that either the subject of the discovery must be set forth in the rule or the party seeking discovery must show good cause why the trial court should order the requested discovery. Absent such a showing, courts are without authority to order discovery in criminal cases." *Greenfield*, 271 Mich App at 448.

MCR 6.201(A) governs mandatory discovery. The rule provides:

In addition to disclosures required by provisions of law other than MCL 767.94a, a party upon request must provide all other parties:

(1) the names and addresses of all lay and expert witnesses whom the party may call at trial; in the alternative, a party may provide the name of the witness and make the witness available to the other party for interview; the witness list may be amended without leave of the court no later than 28 days before trial;

(2) any written or recorded statement, including electronically recorded statements, pertaining to the case by a lay witness whom the party may call at trial, except that a defendant is not obliged to provide the defendant's own statement;

(3) the curriculum vitae of an expert the party may call at trial and either a report by the expert or a written description of the substance of the proposed

---

[2] "There is no general constitutional right to discovery in a criminal case." *People v Elston*, 462 Mich 751, 765; 614 NW2d 595 (2000). Moreover, due process requires only that the prosecution provide a defendant with material, exculpatory evidence in its possession. *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994).

testimony of the expert, the expert's opinion, and the underlying basis of that opinion;

(4) any criminal record that the party may use at trial to impeach a witness;

(5) a description or list of criminal convictions, known to the defense attorney or prosecuting attorney, of any witness whom the party may call at trial; and

(6) a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including any document, photograph, or other paper, with copies to be provided on request. A party may request a hearing regarding any question of costs of reproduction, including the cost of providing copies of electronically recorded statements. On good cause shown, the court may order that a party be given the opportunity to test without destruction any tangible physical evidence.

The Marquette County Prosecutor's disposition record in an unrelated case involving defendant does not fall within any of the types or categories of evidence described in the rule and, therefore, it was not subject to mandatory disclosure under MCR 6.201(A). Further, the Marquette County Prosecutor's disposition record is not subject to disclosure under MCR 6.201(B), which governs discovery of information known to the prosecuting attorney,[3] because it does not fall within any of the categories of discoverable evidence. Defendant did not show that the Marquette County Prosecutor's disposition record was exculpatory evidence known by the

---

[3] MCR 6.201(B) provides:

Upon request, the prosecuting attorney must provide each defendant:

(1) any exculpatory information or evidence known to the prosecuting attorney;

(2) any police report and interrogation records concerning the case, except so much of a report as concerns a continuing investigation;

(3) any written or recorded statements, including electronically recorded statements, by a defendant, codefendant, or accomplice pertaining to the case, even if that person is not a prospective witness at trial;

(4) any affidavit, warrant, and return pertaining to a search or seizure in connection with the case; and

(5) any plea agreement, grant of immunity, or other agreement for testimony in connection with the case.

prosecution.[4] MCR 6.201(B)(1). Indeed, the prosecutor in this case did not have a copy of the disposition record and denied knowing the reason why the Marquette County Prosecutor declined to bring charges.

If discovery of the requested material is not expressly allowed by the court rule, the party seeking discovery must show good cause why the trial court should order the requested discovery. MCR 6.201(I); *Greenfield*, 271 Mich App at 451-452. Defendant sought the Marquette County Prosecutor's disposition record because he wanted to know the rationale behind the decision to not prosecute defendant. Defendant did not provide the trial court with any articulable reasons why the information was sought, other than general speculation that the information could possibly help his defense. Both in the trial court and on appeal, defendant fails to explain how the Marquette County Prosecutor's reasons underlying the decision not to prosecute him in Marquette County would help his case in Alger County. One prosecutor's determination that evidence in a particular case does not support criminal charges is irrelevant to whether different evidence in a separate case in another county would support criminal charges there. Defendant did not make a sufficient showing of good cause to support an order requiring the discovery of evidence to which he was not otherwise entitled. Thus, the trial court reached the correct result in denying defendant's motion for discovery, even if for the wrong reason.[5] See *In re People v Jory*, 443 Mich 403, 425; 505 NW2d 228 (1993) ("Where a trial court reaches the correct result for the wrong reason, its decision need not be reversed on appeal.").

## B. AUTHENTICATION OF RECORDED EVIDENCE

Defendant argues that the trial court abused its discretion by admitting a recording of a voicemail message that he left for the adoptive mother because the recording was not properly authenticated. We review this issue for an abuse of discretion. *Bynum*, 496 Mich at 623.

MRE 901(a) provides that an item may be authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(b)(1) notes that one way to authenticate an item is through "[t]estimony that a matter is what it is claimed to be." An audio recording can be "authenticated by having a knowledgeable witness identify the voices on the tape." *People v Berkey*, 437 Mich 40, 50; 467 NW2d 6 (1991). Defendant does not dispute the content of the recording and concedes that his voice is on the recording. The

---

[4] Due process requires that the prosecutor turn over known exculpatory evidence. *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). This is contemplated in the court rule, MCR 6.201(B)(1).

[5] Defendant's and the trial court's reliance on MCR 6.201(C) was misplaced because that rule governs prohibited discovery and provides in subrule (1) that "[n]otwithstanding any other provision of this rule, there is no right to discover information or evidence that is protected from disclosure by constitution, statute, or privilege, including information or evidence protected by a defendant's right against self-incrimination, except as provided in subrule (2)." Because the material sought by defendant was not discoverable under subrule (A) or (B), subrule (C) is inapplicable.

adoptive mother testified that the evidence that was being offered was a re-recording of a voicemail message that defendant left in January 2015. Her testimony was sufficient to authenticate the recording as a voicemail message left by defendant in January 2015, which is what the prosecution claimed it to be. Thus, the trial court did not abuse its discretion by admitting the recording.[6]

Defendant also argues that the recording should have been excluded under MRE 403 because its content was unfairly prejudicial. Because defendant did not object to the recording on this ground at trial, this claim is unpreserved. *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996). Therefore, we review this unpreserved argument for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Defendant argues that the recording was unduly prejudicial because of his reference to the "DHS" possibly providing assistance in paying the propane bill for the trailer property. He argues that a listener could infer that he was attempting to defraud DHS. Defendant merely stated that he was going to attempt to get help from that agency. He never stated or suggested that he intended to submit any false information to that agency to obtain assistance with paying the bill. Further, other than the vague references in the recording, there was no mention at trial regarding DHS or any potential fraud on the agency. Accordingly, we reject defendant's unpreserved argument that the recording was unfairly prejudicial.

## C. THE TRIAL COURT'S RESPONSES TO DEFENDANT'S OBJECTIONS TO INADMISSIBLE EVIDENCE

Defendant argues that the trial court erred by failing to instruct the jury to disregard evidence that the trial court struck after sustaining objections by defense counsel. While defendant objected to each of the comments, he did not object to the adequacy of the trial court's responses to his objections or request further instruction by the trial court to disregard the improper testimony. Therefore, this issue is unpreserved, *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007), and is reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

Five of the seven instances in which defendant raised an objection to improper testimony occurred during the adoptive mother's testimony, with three of the instances occurring during the same line of questioning. After the first objection, when she testified that defendant was "getting physical" with her, the trial court held a conference outside the jury's presence. After the second objection—which was to the adoptive mother's testimony that defendant was physically abusive

---

[6] Contrary to defendant's argument, whether the recording of the message was an original recording or a duplicate re-recording has no bearing on its authenticity. The adoptive mother testified that after she received the recorded message, she obtained a new phone, so she re-recorded the message from her old phone to her new phone. Because the original recording was no longer available, the prosecutor was permitted to introduce a re-recording of the message. See MRE 1004(2).

with her—the trial court sustained the objection and instructed her to "just respond to the question." After the third objection—to her testimony that she obtained "a criminal PPO" to keep defendant away—defendant moved to strike the comment. The trial court responded, "All right. Now, Miss, I'm gonna have to ask you to listen to the question, carefully . . . and just respond to the question . . . as it's addressed." There were no further comments concerning physical abuse toward the adoptive mother, and she did not attempt to explain any instances of physical abuse. The fourth reference occurred when she testified that she lived in an unsafe environment. Following an off-the-record discussion, there were no further questions regarding the environment.

Given the trial court's response to each of the objections within a short time period, in which it conveyed to the jury that evidence of past physical abuse was not admissible and no further information of that nature was presented, the jury would have understood that it was not to consider the evidence. Even if the absence of a specific instruction to disregard the testimony could be considered plain error, reversal would not be warranted because defendant's substantial rights were not affected. HT's allegations did not involve physical abuse or threats of violence. Thus, the absence of an instruction to disregard the limited references to physical violence against the adoptive mother does not warrant reversal of defendant's convictions.

Regarding the other three references that defendant challenges, for two of them the trial court clearly ruled in defendant's favor and struck the testimony. The third reference involved the trial court asking HT's brother questions that had been submitted by the jury. After defendant objected to one of the questions, the trial court moved on without the witness answering the question. Because no testimony was provided, there was no testimony to strike and no limiting instruction was necessary.

Defendant has failed to show plain error affecting his substantial rights as a result of the trial court's failure to specifically instruct the jury to disregard testimony after sustaining defendant's objections to the testimony.

### D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant complains that he was denied the effective assistance of counsel at trial. We disagree.

Generally, "[a] claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. Because defendant did not raise this issue in an appropriate motion in the trial court and this Court denied his motion to remand, our review of this issue is limited to errors apparent from the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007); *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

To establish ineffective assistance of counsel, defendant "must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been

different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. *Id.* at 52. Defendant must overcome a strong presumption that the challenged conduct might be considered sound trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). This Court "neither substitutes its judgment for that of counsel regarding matters of trial strategy, nor makes an assessment of counsel's competence with the benefit of hindsight." *People v Mutuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

## 1. FAILURE TO CALL WITNESSES

Defendant first claims that trial counsel failed to do enough to secure the presence of HT's biological mother from South Carolina. He maintains that HT's biological mother would have testified that HT's adoptive mother "had reportedly falsified records and lied during the adoption proceedings." He also claims that HT's biological mother had information that her now-deceased husband and father of HT sexually assaulted another child. During pretrial proceedings, trial counsel suggested that a possible defense would be to suggest that HT was confusing defendant with her father. Trial counsel explained that HT's biological mother was available to testify, and counsel requested help to secure her appearance. The trial court ruled that the prosecutor did not need to assist counsel in obtaining her appearance. It is unclear what defendant is suggesting that his counsel should have done further.

Also, "[i]neffective assistance of counsel may be established by the failure to call witnesses only if the failure deprives defendant of a substantial defense." *People v Julian*, 171 Mich App 153, 159; 429 NW2d 615 (1988). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). Defendant asserts that he intends to obtain an affidavit from HT's biological mother, but he has not done so. The record indicates that HT was adopted when HT was 17 months old, and HT never knew her father. The charged offense relates to sexual abuse that occurred when HT was 8 years old. Defendant has not established that trial counsel's failure to procure HT's biological mother's appearance fell below an objective standard of reasonableness or deprived him of a substantial defense.

Defendant also claims that trial counsel was ineffective for failing to call a number of other witnesses. He first complains that counsel failed to call witnesses who could have bolstered his claim that he and the adoptive mother were in an ongoing civil dispute. However, both of them testified at trial regarding the civil dispute, and the adoptive mother further testified that there were financial disputes between the two. Because the jury was aware from both the adoptive mother's and defendant's testimony that there was a civil dispute between the two of them, defense counsel's failure to call additional witnesses to establish this same fact did not deprive defendant of a substantial defense. Moreover, because defendant does not explain what testimony additional witnesses could have offered that was not established through the adoptive mother's and defendant's testimony, he has not shown a reasonable probability that failure to call additional witnesses affected the outcome.

Defendant also argues that counsel was ineffective for failing to call a number of other "character and impeachment" witnesses. He has not, however, supplied affidavits or other offers of proof regarding what testimony these other witnesses might have offered on his behalf.

Further, it is unclear how his trial attorney from his 2000 criminal case would have offered useful testimony in this case. Defendant has failed to demonstrate that any of these witnesses could have provided him with a substantial defense.

Defendant further mentions that counsel should have discovered witnesses who could have testified about HT's truthfulness. He claims that there was evidence that HT was punished at school for theft and lying, and such evidence would have impeached her credibility. Defendant notes that this claim was briefly explored at trial, but the adoptive mother denied it. Again, however, although defendant claims that evidence exists, he has failed to offer evidence to substantiate his claim. Thus, defendant has failed to establish the factual predicate for his claim. *People v Hoag,* 460 Mich 1, 6-7; 594 NW2d 57 (1999) (a defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel).

Defendant also asserts that trial counsel failed to properly file a witness list, but he concedes that "there is no indication that [defendant] lost rights" as a result of this alleged error, and that, by "itself, the issue is not reversible error." Because defendant concedes that he was not prejudiced by this alleged deficiency, this claim cannot succeed.

## 2. PRETRIAL PREPARATION

Defendant complains that trial counsel failed to effectively respond to the prosecutor's notice of intent to introduce TG's other-acts testimony. Defense counsel challenged the admission of this testimony at trial, but the trial court ruled that the evidence was admissible. As discussed previously, the trial court did not err in admitting TG's testimony. Because the evidence was properly admitted, any argument against its admission would have been futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant also asserts that trial counsel was ineffective for failing to be familiar with *Gilmore*, 222 Mich App 442, when addressing his argument that the Marquette County Prosecutor's Office should be required to disclose its reasons for not prosecuting him. However, regardless of counsel's familiarity with *Gilmore*, defendant has not established that the material was otherwise discoverable. Therefore, defendant has not established any resulting prejudice.

## 3. FAILURE TO IMPEACH PROSECUTION WITNESSES

Defendant contends that trial counsel was ineffective for failing to effectively impeach the credibility of the adoptive mother, HT, and HT's brother. The decision whether and how to impeach a witness is a matter of trial strategy that this Court does not second-guess. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). The record discloses that trial counsel did impeach the adoptive mother's testimony that she did not receive a subpoena for HT's brother to appear at the preliminary examination during his direct examination of Marquette County Sheriff's Deputy Dean Rushford, who testified that he served the subpoena on the adoptive mother. Trial counsel also extensively explored the issue of the civil dispute between the adoptive mother and defendant. Defendant does not explain how different questioning by trial counsel would have fared better. Although trial counsel did not directly question HT about stealing items at school, he explored that issue in his questioning of the adoptive mother and

defendant. Defendant has not overcome the presumption that counsel's decision to elicit this testimony through other witnesses was reasonable trial strategy. Lastly, trial counsel elicited testimony from HT's brother that HT would often voluntarily crawl into bed with defendant, and that she did so on the 2014 camping trip. Counsel also elicited from HT's brother that he never felt uncomfortable about the relationship between defendant and HT, and that he never felt that HT was unsafe during the camping trip. Defendant does not explain what more counsel could have done or how he was prejudiced by counsel's questioning of HT's brother.

Defendant cites other instances in which he believes defense counsel should have better explored. Again, however, he does not explain what counsel could have done differently or how he was prejudiced. His failure to establish the factual predicate for these additional claims precludes relief. *Hoag*, 460 Mich 1, 6-7.

### 4. FAILURE TO CALL EXPERT WITNESSES AND A PRIVATE INVESTIGATOR

Defendant also argues that trial counsel failed to investigate and present evidence that would have linked HT's statements to the adoptive mother's "effort to manipulate the criminal justice system." Defendant admits, however, that trial counsel

> tried to block prior acts testimony unrelated to the sexual assault charges, tried to keep out testimony of a prior acquittal following trial for another sexual assault case, and tried to determine why another county did not press charges in a nearly identical set of allegations.

Defendant also concedes that

> [t]rial counsel did succeed in arguing a theory that the alleged victim's mother manipulated the victim into making the sexual assault allegations in order to prevail in a civil lawsuit. However, trial counsel failed to link the trial theory to the statements of the alleged victim.

Defendant argues, however, that more could have been done. For example, he claims that "an expert witness in the nature of sexual assault allegations made by a juvenile could [have] help[ed] clarify how the allegations came about. If the defense strategy was accurate, the alleged victim's mother manipulated the girl into creating a fictional assault scenario, which may be evidence in the record." Defendant does not explain what evidence actually exists to substantiate this speculation. Moreover, expert witnesses are not permitted to function as human lie detectors and opine that witnesses lied or manufactured certain claims—at least not without evidence to back up their opinions. See *People v Kowalski*, 492 Mich 106, 160; 821 NW2d 14 (2012), (MARKMAN, J., concurring); *People v Stricklin*, 162 Mich App 623, 637; 413 NW2d 457 (1987) ("an expert cannot be used as a human lie detector to give a stamp of scientific legitimacy to the truth of the witness' statement"). Although defendant also suggests that counsel should have requested appointment of an investigator, and he posits different subjects an investigator could have pursued, he has not identified evidence suggesting that any investigation would have been fruitful. Thus, there is no basis to conclude that the failure to obtain an investigator deprived defendant of a substantial defense. In sum, defendant concedes that his claim regarding the appointment of an investigator is just a fishing expedition, and that he does not have any actual

evidence that an investigator would have procured any information beneficial to his defense. Accordingly, this claim cannot succeed.

Affirmed.[7]

/s/ Thomas C. Cameron
/s/ Patrick M. Meter
/s/ Stephen L. Borrello

---

[7] At oral argument, defendant's counsel argued for the first time that the prosecutor failed to produce the victim's initial forensic interview before trial. He claims that in the first interview the victim did not disclose the sexual assault to the extent that she did in the second interview, and therefore, the first interview could have been used for impeachment purposes. We allowed supplemental briefing on the issue. After review, we conclude that defendant's claim is meritless. Defendant has not shown that his trial counsel was unaware of the first interview. In fact, trial counsel was in possession of the police officer's report that summarized the victim's responses at the first interview in detail, and trial counsel used the report for impeachment purposes. Moreover, trial counsel acknowledged there were two interviews during the trial, but expressed that he was unaware the prosecutor would attempt to admit them. Defendant has in no way shown plain error affecting his substantial rights or that trial counsel was ineffective for failing to request the video of the first forensic interview.