*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

THOMAS WAYNE PETTIT,

Defendant-Appellant.

UNPUBLISHED
January 11, 2024

No. 359594
Presque Isle Circuit Court
LC No. 20-093137-FC

Before: BOONSTRA, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of nine counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (victim under 13 years old), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b) (victim under 13). The trial court sentenced defendant to serve concurrent prison terms of 25 to 50 years for eight of the CSC-I convictions, and 10 to 15 years for the CSC-II conviction, and a consecutive prison term of 25 to 50 years for one CSC-I conviction. We affirm defendant's convictions but remand for resentencing.

## I. BACKGROUND

Defendant's convictions arose from allegations that he sexually assaulted the complainant, his daughter. During an interview with a detective, defendant confessed to sexually assaulting the complainant approximately 20 times.

The complainant testified that the molestation began when she was age six, and escalated after her eighth birthday. The complainant stated that the crimes occurred two or three times a week until she required psychiatric hospitalization when she was 13 years old.

After she was released to her mother's care, the complainant visited defendant's home once, when she was 15 years old. The complainant testified that defendant sexually assaulted her during that visit. The complainant disclosed the sexual abuse to Children's Protective Services in the course of an investigation of other allegations against defendant.

At the time of trial, the complainant had been placed at a residential facility for minors for approximately 14 months. She testified from a separate courtroom, in the presence of the prosecutor and defendant's counsel, while the judge, jury, defendant, and gallery viewed the testimony on a screen.

## II. REMOTE TESTIMONY

On appeal, defendant first argues that his right to confront the witnesses against him was abridged by the complainant's testimony from a remote location. He alternatively argues that his trial counsel provided ineffective assistance by failing to request a limiting instruction with respect to the complainant's remote testimony, and that he was entirely deprived of his right to counsel during the complainant's testimony because he lacked direct access to counsel during that time. None of these claims warrant appellate relief.

## A. RIGHT TO CONFRONTATION

This court reviews de novo whether a defendant's constitutional right to confrontation was violated. *People v Rose*, 289 Mich App 499, 505; 808 NW2d 301 (2010).

Both the Michigan and the United States Constitution guarantee criminal defendants the right to confront the witnesses against them. US Const, Am VI; Const 1963, art 1, § 20. The central protection offered by the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact. *People v Pesquera*, 244 Mich App 305, 309; 625 NW2d 407 (2001). Confronting one's accuser includes "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." *Maryland v Craig*, 497 US 836, 846; 110 S Ct 3157; 111 L Ed 2d 666 (1990).

Defendant first argues that allowing the complainant in this case to testify through the use of one-way video technology violated his right to confrontation protected by the federal Constitution. In *Craig*, the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment does not categorically prohibit a child witness in an abuse case from testifying outside the defendant's physical presence by one-way closed-circuit television. *Id*. at 857. The Court explained its holding as follows:

> In sum, we conclude that where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation. [*Id*.]

Defendant makes no argument that the trial court here ran afoul of *Craig*, but instead argues that *Craig* was wrongly decided, and that the use of one-way video testimony necessarily violates a defendant's right to confrontation. Obviously, this Court cannot overrule a decision by the United States Supreme Court, and our own Supreme Court has recently recognized that *Craig* remains

binding precedent. See *People v Jemison*, 505 Mich 352, 365; 952 NW2d 394 (2020). Accordingly, defendant has not demonstrated that his right to confrontation protected by the Sixth Amendment was violated.

Defendant next argues that the use of one-way video testimony in this case violated his right to confrontation protected by the Michigan Constitution. "Following the decision in *Craig*, [Michigan courts] adopted the test stated in *Craig* and determined that trial courts may limit a defendant's right to face his or her accuser in person and in the same courtroom." *People v Rose*, 289 Mich App 499, 515; 808 NW2d 301 (2010), citing *People v Burton*, 219 Mich App 278, 289; 556 NW2d 201 (1996); *People v Pesquera*, 244 Mich App 305, 309-314; 625 NW2d 407 (2001); and *People v Buie*, 285 Mich App 401, 408-410; 775 NW2d 817 (2009). Like with his previous argument, defendant does not argue that the trial court ran afoul of the procedure a court in Michigan must follow to limit a defendant's right to face his accuser in person without violating the defendant's right to confrontation protected by the Michigan Constitution. Instead, he argues that the use of one-way video testimony necessarily violates a defendant's right to confrontation protected by the Michigan Constitution. While defendant correctly observes that this Court is not bound by *Craig* when deciding questions of state constitutional law, defendant ignores that this Court adopted the test stated in *Craig* to determine whether a defendant's right to confrontation protected by the Michigan Constitution was violated. We are bound to follow the rule of law established by a prior published decision of this Court that has not been reversed or modified, MCR 7.215(J), and the relevant portions of *Rose*, *Burton*, *Pequera*, and *Buie* have not been reversed or modified. Accordingly, we must reject defendant's argument that the use of one-way video technology necessarily violated his right to confrontation protected by the Michigan Constitution.

## B. INEFFECTIVE ASSISTANCE

Defendant next argues that his trial counsel provided ineffective assistance by failing to request that the trial court provide a limiting instruction to the jury with regard to the complainant's testimony.

Generally, claims of ineffective assistance present mixed questions of fact and law—the trial court's factual findings are reviewed for clear error, "while the court's determination whether those facts violated the defendant's right to the effective assistance of counsel is reviewed de novo." *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021). "Defendant, however, failed to obtain an evidentiary hearing to expand the record, so there are no factual findings to which this Court must defer, and this Court's review is instead limited to errors apparent on the record." *Id*.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) "counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). "Effective assistance is strongly presumed, and the defendant bears the heavy burden of proving otherwise." *Haynes*, 338 Mich App at 429 (citation omitted). "If this Court can conceive of a legitimate strategic reason for trial counsel's act or omission, this Court cannot conclude that the act or omission fell below an objective standard of reasonableness." *Id*. at 429-430. "This Court does not second-guess counsel

on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

In this case, the trial court twice offered to issue a limiting instruction to the jury, if requested by defendant's trial counsel, with regard to the complainant's testifying from a remote location over one-way video. Defense counsel informed the trial court that he did not want the trial court to issue the instruction.

On appeal, defendant argues that the lack of such instruction allowed the jury to speculate that it was too dangerous for the complainant to be in a room with defendant, or that he had recently threatened her. Defendant asserts that such speculation would have been avoided with an instruction that the testimonial procedure was authorized by law, and that the jury should consider only the evidence and not the fact that the complainant testified from another room. As to the latter point, the trial court *did* instruct the jury to base its verdict on only the evidence, and in so doing, the court explained what was considered evidence and what was not. Jurors are presumed to follow their instructions. *People v Graves*, 458 Mich 476, 487; 581 NW2d 229 (1998).

Regardless, "[f]ailing to request a particular jury instruction can be a matter of trial strategy." *People v Thorne*, 322 Mich App 340; 912 NW2d 560 (2017) (quotation marks and citation omitted). Defense counsel was plainly aware of the option of an instruction regarding remote testimony, and he declined it. It is thus apparent that counsel strategically decided not to risk suggesting to the jury immediately before deliberations that the young complainant was so fearful of defendant that she could not be in the same room with him.

Defendant also argues that his trial counsel provided ineffective assistance by not objecting to the complainant's remote testimony insofar as the procedure prevented defendant from conferring with his attorney during the testimony, thus depriving defendant of participating in the adversarial testing of the testimony. This, according to defendant, amounted to a total deprivation of his right to counsel.

Both the United States and Michigan constitutions guarantee a defendant facing incarceration the right to counsel at all critical stages of the criminal process. *United States v Cronic*, 466 US 648, 659; 104 S Ct 2039; 80 L Ed 2d 657 (1984); *People v Williams*, 470 Mich 634, 641-642; 683 NW2d 597 (2004). This principle encompasses any "proceedings where counsel's absence might harm defendant's right to a fair trial." *People v Buie (On Remand)*, 298 Mich App 50, 61; 825 NW2d 361 (2012) (quotation marks and citation omitted). The right to counsel attaches at the initiation of criminal proceedings because that is the time at which both parties have committed to their adversarial positions, and the defendant thus requires the assistance of a legal expert to counter the prosecutor's expertise. *United States v Gouveia*, 467 US 180, 189; 104 S Ct 2292; 81 L Ed 2d 146 (1984). The deprivation of counsel at a critical stage of the proceedings is structural error requiring automatic reversal. See *Gideon v Wainwright*, 372 US 335, 342-345; 83 S Ct 792; 9 L Ed 2d 799 (1963); *People v Willing*, 267 Mich App 208, 224-225, 228-229; 704 NW2d 472 (2005).

It is obvious that cross-examination of a complainant at trial is a critical stage of the proceedings. That said, defendant was not denied his right to counsel during the cross-examination of the complainant, despite that defendant and his attorney were in separate rooms. Rather, defense

counsel, on defendant's behalf, actively participated in the cross-examination of the victim. And defendant was not wholly prevented from communicating with his counsel during this cross-examination; defendant watched the testimony with the judge, jury, and gallery, and could confer with counsel during breaks. The trial court explained that its plan was to "to allow defense counsel an opportunity to consult with defendant both at the beginning and at the end of the cross-examination, to facilitate communication between counsel and client with regard to any topics for questioning." Defendant took advantage of this opportunity—the record reflects that defendant conferred with his counsel regarding the complainant's testimony after her cross-examination. In other words, contrary to defendant's suggestion on appeal that he unable to participate in his counsel's questioning of the complainant, defendant retained avenues for participating in his counsel's questioning of the complainant.[1] For these reasons, defendant has not shown that his trial counsel's performance in representing him during the questioning of the complainant constituted a denial of counsel.

### III. VOUCHING

Defendant next argues that he was denied a fair trial when two witnesses improperly vouched for the complainant's credibility.

A trial court's decision on an evidentiary issue will be reversed on appeal only when there has been a clear abuse of discretion. *People v Holtzman*, 234 Mich App 166, 190; 593 NW2d 617 (1999). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Unpreserved constitutional claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under plain-error review, reversal is warranted only if the plain error resulted in the conviction of an innocent defendant, or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id.*

### A. DINGWALL

Defendant argues that the trial court erred by allowing the complainant's therapist, Shawna Dingwall, to provide testimony without adequate qualifications, and that the witness improperly vouched for the veracity of the complainant. Dingwall testified that she had been the complainant's therapist while the complainant was residing at a residential facility for approximately 14 months, and described some of the complainant's behaviors, such as aggression toward herself and others, self-injury, running away, and isolation, as well as her diagnoses for PTSD and depression. The prosecutor asked whether these "behaviors that she's exhibited, can you characterize them as consistent," Dingwall interjected, "Yes" and the prosecutor continued, "with the behaviors of other victims of trauma events, specifically sexual trauma?" Defense counsel objected on the grounds that Dingwall was not qualified, as a lay witness, to answer, and

---

[1] We additionally note that, after accepting that the trial court overruled the objection to remote testimony on Confrontation Clause grounds, defense counsel expressed satisfaction with the trial court's procedures, and did not suggest that his representation of defendant was compromised.

that the response could be inadmissible vouching for the complainant's reports of sexual abuse. After the trial court overruled the objections, the prosecutor asked the question differently: "[T]he behaviors that you have seen from [the complainant] in the course of the time you've been dealing with her, are those behaviors consistent with behaviors of other children you have dealt with while at [the facility]?" Dingwall responded, "Yes."

Preliminarily, defendant's argument is based on a question that Dingwall did not answer. Defendant asserts that "Dingwall testified that [the complainant's] behavior was consistent with the behavior of children suffering from PTSD caused by sexual trauma." However, Dingwall answered whether the complainant's behavior was consistent with other children she encountered at the facility, which was not a facility specifically for survivors of sexual abuse, but rather "a placement for . . . girls that have been adjudicated through the court system." The question was not sufficiently clear to establish that the prosecutor was asking about the complainant's behaviors attributable to sexual abuse, or another factor. Although many of Dingwall's clients were sexual-abuse victims, she did not testify that her practice at the facility was limited to such victims. Because the challenged question sought information about the general behavior of residential-facility clients, and not of sexual-abuse victims in general, defendant's argument about vouching for the complainant's reports of sexual abuse is inapt.

Defendant also argues that Dingwall was unqualified to give an opinion regarding the behaviors of sexual-assault survivors because she did not have training in that area. However, as discussed, defendant's trial counsel objected to a question to Dingwall about the complainant's behavior in comparison to sexual-abuse survivors, and the prosecutor ultimately asked about comparisons to the general behavior of persons placed at the residential facility.

In any event, to the extent that the prosecutor's question about residents at the facility effectively constituted asking Dingwall about sexual-assault victims, defendant's challenge to Dingwall's qualifications is unavailing. Dingwall testified about post-graduate certifications she had earned, including in the areas of "chemical abuse and alcohol abuse; and then also with juvenile sex offenders, certified counselor professional." That Dingwall had not earned post-graduate credentials specifically in relation to sexual-abuse victims does not mean that she was not trained for, or lacked experience with, treating such victims. In fact, she testified that 80% to 85% of the "hundreds" of persons whom she had treated in her seven years at the facility were sexual-abuse victims. Lay opinion testimony is permitted where it is "rationally based on the perception of the witness and . . . helpful to a clear understanding of the witness' testimony or the determination of a fact at issue." MRE 701. Lay witnesses are qualified to testify about the opinions they form as a result of direct physical observation. *People v Hanna*, 223 Mich App 466, 475; 567 NW2d 12 (1997). Dingwall's extensive experience in treating sexual-abuse survivors qualified her to answer questions about the behavior of sexual-assault victims.

## B. DR. CAROLINA

Dr. Regina Carolina, a psychiatrist, testified that she had treated the complainant remotely by communication technology for about seven months while the complainant was at the residential facility. Dr. Carolina reported that she diagnosed the complainant with depression and PTSD, which could result from the trauma of sexual abuse, and then described the symptoms of PTSD. She testified that she received reports of the complainant's behavior from residential staff, and that

this behavior was consistent with that of others who had PTSD. Dr. Carolina stated that the complainant told her that she had been sexually abused, and when asked, "[G]iven [the complainant's] symptoms that she displayed, would that be typical of people who have been exposed to sexual trauma and have PTSD?" Dr. Carolina responded, "Absolutely." Defendant argues that, with this answer, Dr. Carolina improperly vouched for the complainant's testimony that she had been sexually abused because Dr. Carolina indicated that she thought that the complainant was telling the truth.

Because credibility questions are for the jury to resolve, it is generally improper for a witness to provide an opinion on the credibility of another witness. *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014). For that reason, an expert may not testify that abuse occurred solely on the basis of a victim's report. *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019). In this case, however, Dr. Carolina did not provide an opinion on the veracity of the complainant's reports of abuse, or on whether the alleged abuse did occur. To the contrary, she testified that the complainant reported that she had experienced other kinds of abuse that could contribute to her observed symptoms, and was cross-examined about other possible causes of the behaviors that had been attributed to PTSD. "It has . . . long been recognized that the behavior of victims of varying kinds of trauma often appears irrational and confusing to most people; and expert testimony is admissible and appropriate to explain that behavior." *People v Spaulding*, 332 Mich App 638, 659; 957 NW2d 843 (2020). As took place here, expert testimony is permissible "to generally explain the common postincident behavior of children who are victims of sexual abuse." *People v Peterson,* 450 Mich 349, 373; 537 NW2d 857 (1995). An expert witness may testify about the general behavior of sexual-abuse victims "for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim or to rebut an attack on the victim's credibility." *Id.* In this case, Dr. Carolina permissibly testified about the complainant's behavior in comparison to other persons suffering from PTSD as the result of sexual trauma, rather than providing an opinion on the veracity of the complainant's reports or the exact cause of her PTSD.

## IV. CONSECUTIVE SENTENCING

For his final issue, defendant argues that his trial counsel provided ineffective assistance by failing to object to the trial court's imposition of a consecutive sentence for one conviction of CSC-I. We agree, and accordingly remand for resentencing.

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). In Michigan, "concurrent sentencing is the norm," and a "consecutive sentence may be imposed only if specifically authorized by statute." *People v Bailey*, 310 Mich App 703, 723; 873 NW2d 855 (2015). In the case of a CSC-I conviction, a sentencing court "may order a term of imprisonment . . . to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." MCL 750.520b(3).

In this case, the trial court ordered that defendant's sentence for Count 6 be consecutive to the sentence for Count 5. Count 5 was one of five charges of digital penetration of the complainant's vagina when she was less than 13 years old, and Count 6 was one of four charges of penile penetration of the complainant's vagina. Thus, according to MCL 750.520b(3), the

sentence for Count 6 could properly be consecutive to that for Count 5 only if they arose from the same transaction—that is, if defendant committed a digital penetration and penile penetration of the complainant as parts of a single occasion.

An ongoing pattern of sexual assault consisting of episodes of assault over time does not mean that the individual crimes were a part of the same transaction. *Bailey*, 310 Mich App at 725. "For multiple penetrations to be considered as part of the same transaction, they must be part of a 'continuous time sequence,' not merely part of a continuous course of conduct." *Id*. Two sexual penetrations occur in a single transaction when they "sprang one from the other and had a connective relationship that was more than incidental," *People v Ryan*, 295 Mich App 388, 403; 819 NW2d 55 (2012), and "there was no relevant disruption in time or in the flow of events between the two distinct offenses," *id*. at 404.

At trial, the complainant testified that, when she was six years old, defendant rubbed her vagina, then penetrated it with his fingers, and explained to her that his actions were justified by religious principles. She was asked how often "what you just described happened," and responded that it happened approximately three times a week until she was eight years old. The complainant testified that beginning at age eight, defendant "did the same routine [as] when I was six. He told me everything, and he told me to take my clothes off, and I did, and he put his penis in my vagina." Neither party elicited clarification about what the victim meant when she said that defendant "did the same routine."

The trial court interpreted the complainant's testimony that defendant "did the same routine [as] when I was six" as meaning that defendant digitally penetrated her vagina. On the basis of this understanding, the trial court believed that the complainant's testimony supported finding that, when she was eight years old, defendant digitally penetrated her vagina and then penetrated her vagina with his penis.

While the trial court's interpretation of what the complainant meant when she said that defendant "did the same routine [as] when I was six" is plausible if that phrase is considered in isolation, the complainant's testimony immediately following the statement makes the trial court's interpretation untenable. The complainant testified that when she was six, defendant would justify sexually abusing her by telling her that "God wants this" and "your guardian angel told me to do this," and then order her to take off her clothes before digitally penetrating her vagina. She then testified that when she was eight years old, defendant "did the same routine [as] when I was six. He told me everything, and he told me to take my clothes off, and I did, and he put his penis in my vagina." In context, "the same routine" referred to defendant giving the complainant the same God and guardian-angel speech, and ordering her to disrobe before committing a penetrative act.

At defendant's sentencing, his trial counsel stated on the record that the trial court had discretion to impose consecutive sentences but requested that it not do so. This amounted to a waiver and accordingly extinguished any error in the trial court's imposition of consecutive sentences. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). Accordingly, defendant cannot (and does not) substantively contest the trial court's imposition of consecutive sentences, but he argues that his trial counsel performed deficiently by acquiescing to the imposition of consecutive sentences.

The performance of trial counsel is deficient if "it fell below an objective standard of professional reasonableness." *Taylor*, 275 Mich App at 186. Because defendant's trial counsel's acquiescence to the trial court's finding that two sexual assaults occurred during the same transaction lacks record support, it amounted to deficient performance. And the resulting extension of defendant's period of incarceration by 25 to 50 years was obvious seriously prejudicial to him. For these reasons, defendant has established his claim of ineffective assistance of trial counsel at sentencing. We accordingly vacate defendant's sentence and remand for resentencing.[2]

Affirmed in part but remanded for resentencing. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle

---

[2] As the prosecution accurately observes on appeal, the trial court believed that it could impose consecutive sentences at least in part due to defense counsel's representation that the court had discretion to do so. And because consecutive sentencing was discretionary as opposed to mandatory, the trial court provided justifications for consecutive sentences in this case. Those justifications included "the extreme harm that defendant caused his daughter," "the length of time that the abuse took place," and "some really aggravating circumstances" like defendant's threatening to harm the complainant and her family if she disclosed the abuse, and defendant's reference to "God" and the complainant's "guardian angel" to justify his abuse. It is thus apparent that the trial court imposed consecutive sentences as a means of providing an individualized and proportionate sentence tailored to this defendant and his offense. As we have now made clear that consecutive sentencing is unavailable in this case, and the trial court's mistake in this respect was due at least in part to defendant's acquiescence to consecutive sentencing before the trial court, we believe that remand for resentencing is appropriate in order to give the trial court the opportunity to fashion an appropriate and individualized sentence for this defendant and his offense.